GEORGE DESCHNER, by Next Friend, NANCY C. DESCHNER, Appellant, v. ST. LOUIS & MERAMEC RIVER RAILROAD COMPANY.

Division One, December 22, 1906.

1. CONTRIBUTORY NEGLIGENCE: One Car Following Another: Question for Jury. An eleven-year-old boy stepped on a platform and waited for a rapidly running passenger car to pass, and before attempting to cross the track looked in the same direction the car went to see if another was coming, but did not look in the opposite direction and hence did not see a mail car coming from that direction 150 feet or more behind the other that had just passed. He took a few steps on to the track and was struck by the mail car. The mail car was an irregular car, and his evidence was that it could not be seen from where he was on the platform, because the passenger car obstructed the view, until that car had passed, and that the gong of the mail car was not sounded, and that the motorman did not look out for him and did not see him. *Held*, that the issue of contributory negligence, under the facts, was for the jury, and was not a question of law to be determined by the court.

2. ———: ———: ———: Child: Looking Twice. An eleven-year-old boy, capable, experienced with tracks and cars and in taking care of himself, is not excused by the law if he does not look for a car as he attempts to cross a street railway track. But when he looks and sees a car and waits for it to pass, and then looks in the direction it has gone and sees none coming, whether or not he is required to look twice, that is, to see whether or not another car is following closely behind the rapid car he first saw, depends on the circumstances—the frequently with which cars, to his knowledge, closely follow each other on the same track, his quickness of thought, his mental grasp, his coolness, the absence of impulsive and boyish thoughtlessness, the fact that the following car was an irregular car, and the fact that it could not be seen from where the boy was standing on the platform until after the other had passed, etc.

3. ———: Boy: Care Required. A boy eleven and one-half yeas old is not chargeable with the same degree of care as is required of a man. He is chargeable with the prudence of the ordinarily prudent boy of that age, under like circumstances.

4. ———: ———: **When an Issue for Jury.** Where two views may be fairly entertained by reasonable men of the conduct of a boy, under given circumstances, the question of whether or not he was guilty of such contributory negligence as bars his recovery for personal injuries, is an issue for the jury.

5. ———: ———: ———: **New Trial: Peremptory Instruction for Defendant.** Where the issue of contributory negligence was one for the jury, and they being properly instructed on that subject found for plaintiff, the granting of a new trial on the ground that the court should have given a peremptory instruction for defendant, is error, unless that action can be sus-- tained on other grounds.

6. ———: **Vigilant Watch Ordinance: Declarative of Common Law.** The Vigilant Watch ordinance of St. Louis, providing that "the conductor, mortorman, gripman, driver or any other person in charge of each car shall keep a vigilant watch for all vehicles and persons on foot, especially children, either on the track or moving towards it, and on the first appearance of danger to such persons or vehicles, the car shall be stopped in the shortest time and space possible," may be sustained not only as a reasonable police regulation, but both duties by it prescribed, namely, of a vigilant watch and the duty to stop as soon as possible on the appearance of danger, may be sus- tained as simply declarative of the common law.

7. ———: ———: ———: **Not Sounding Gong: Eliminating Vigilant Watch.** Merely because there is no evidence that the car was not stopped in the shortest time and space possible, is no reason for omitting from the instruction a requirement on the part of the motorman to keep a vigilant watch—there being evidence that he did not keep such watch.

8. **NEGLIGENCE: Duty to Sound Gong: Assumption: Instruction.** There being substantial evidence that there was time and space in which the motorman could, after the injured party started from the platform on to the track, have warned him by sounding the gong, with which the car was supplied, the strap to the gong · being in the motorman's hand, an instruction which assumes that it was defendant's duty to warn the injured party and which assumes that he had time and space to perform that duty by the use of the gong, is not erroneous.

9. ——— :———: ———: ———: **Appellate Practice: Theory Below.** It is a wise and stiff rule of appellate practice that a case should be heard on the same theory on which it was heard below. Where the case was tried and the instructions on both sides proceeded on the theory that it was the duty of the motor- man to see and warn the injured party, that theory will be

adopted by the appellate court, in ruling on an instruction which assumes that a failure to give such warning was negligence.

10. ———: **Instruction: Omitting Proximate Cause: Aided by Defendant's.** An instruction for plaintiff which fails to require the jury to find that defendant's negligence was the proximate cause of the injury, or which dimly embodies that requirement, may be cured by one given for defendant which clearly imposes that duty.

11. **GRANTING NEW TRIAL: Insufficient Reasons.** Where the reasons assigned by the trial court for granting defendant a new trial were insufficient and no other substantial reasons are pointed out on appeal, the act of the court will be held to be error, and the judgment reinstated.

Appeal from St. Louis City Circuit Court.— *Hon. Franklin Ferriss,* Judge.

REVERSED AND REMANDED (*with directions*).

*Dodge & Mulvihill* and *A. C. Maroney* for appellant; *Walter H. Saunders* of counsel.

(1) The order granting a new trial on the ground that "a peremptory instruction at the close of plaintiff's case should have been sustained," impliedly overruled the demurrer at the close of the whole case, since the motion for a new trial contained this as one of the grounds. In this condition of the record this court has nothing to review unless it is its duty to examine the whole record to see whether the final demurrer should have been sustained, though overruled when presented, and impliedly overruled by the terms of the order granting a new trial. Herdler v. S. & R. Co., 136 Mo. 3; Miller v. Madison Car Co., 130 Mo. 523; Candee v. Railroad, 130 Mo. 153. This court will only examine the grounds on which the motion for a new trial was sustained, in the absence of an affirmative showing by the party in whose favor the new trial was granted that it was properly set aside on other grounds. Emmons v.

Quade, 176 Mo. 28. (2) The demurrer to the evidence, both at the close of plaintiff's case and at the close of the whole case, was overruled by the trial court and should have been overruled, because the case ought to have been submitted to the jury, both as to the motorman's failure to ring his bell, and also as to his failure to comply with the Vigilant Watch ordinance, an ordinance under the police power (Sluder v. Railroad, 189 Mo. 107; Moore v. Railroad, 194 Mo. 1), which is both pleaded and proved. The case was submitted to the jury on the former ground, but the court, at the defendant's request, instructed the Vigilant Watch ordinance out of the case—on what theory we cannot conceive. The order of the court, granting a new trial, because the demurrer at the close of plaintiff's case should have been sustained is therefore, clearly erroneous. (3) The defendant, by introducing evidence, waived the demurrer to the plaintiff's evidence to the extent of assuming the risk of supplying, by its own evidence, the defects, if any, in the plaintiff's case; therefore, if the demurrer to the evidence can be considered at all, all the evidence must be examined, and the burden is upon the respondent, under the Candee case, supra, to show that the demurrer should have been given. Storck v. Mesker, 55 Mo. App. 31; Eswin v. Railroad, 96 Mo. 290; Weber v. Railroad, 100 Mo. 195. (4) In passing upon a demurrer, every inference is to be taken most strongly against the demurrant, and the court must indulge every inference of fact in favor of the party offering the evidence which a jury might indulge with any degree of propriety. Moore v. Railroad, 194 Mo. 1. (5) If there is any error in instruction 1 in failing to charge as to proximate cause, which appellant denies, because this form substantially has been used and approved (Koenig v. Railroad, 193 Mo. 717), it is cured by instruction 4, granted for defendant, which is very specific on this point, since all instruc-

tions must be read together. Austin v. Railroad, 115
Mo. App. 146; Freymark v. Railroad, 111 Mo. App.
208. The same theory was advanced in the instructions
granted by the court of its own motion and those grant-
ed for defendant. Walker v. Railroad, 193 Mo. 480;
Chinn v. Naylor, 182 Mo. 594. (6) When two street
care are running in rapid succession in the same direc-
tion on a double track street railway, and a foot pas-
senger looks for one, sees it, stops, lets it pass, looks
in the other direction, and then steps on the track with-
out again looking, and is immediately struck by the sec-
ond car, it is always a question for the jury whether he
used ordinary care, and this is particularly true as to
a child of eleven years; and, under the facts developed
in this record, showing it to be a regular station of the
defendant for receiving and discharging passengers
—the platform placed there for this purpose—and
known to be such by the motorman. Moore v. Railroad,
95 Mo. App. 737, 194 Mo. 1. (7) Failure to ring
the bell may be the proximate cause of the accident,
and negligence, *per se*, under certain conditions. In
this case the defendant assumed in its instructions that
it was its duty to ring the bell. Foley v. McMahon, 114
Mo. App. 442; Koenig v. Railroad, 173 Mo. 698; Butler
v. Railroad, 93 S. W. 877. (8) Whether or not a child
of eleven years is guilty of contributory negligence is
nearly always a question for the jury. The standard
of ordinary care as to a child of eleven years, under
such circumstances (submitted to the jury in this case),
is necessarily a question for the jury, unless the court
has the power in the present condition of this record,
and is prepared to say that the accident was unavoid-
able. This was expressly submitted to the jury by in-
struction 5, given for defendant, and the jury found the
accident was not a "mere accident without fault of any-
one" or unavoidable. Butler v. Railroad, 93 S. W. 877;
Walker v. Railroad, 193 Mo. 482; Schmitz v. Railroad,
46 Mo. App. 380; Beier v. Railroad, 94 S. W. 876; Mul-

lin v. Railroad, 94 S. W. 288. (9) Unless the evidence of contributory negligence is so clear that there is no reasonable ground for two opinions about it, the court cannot pronounce the injured party's acts contributory negligence, as a matter of law, but should submit the case to the jury to decide the point, as a matter of fact. Young v. Waters-Pierce Oil Co., 185 Mo. 634; Holloway v. Kansas City, 184 Mo. 19; Erickson v. Railroad, 171 Mo. 647; Walker v. Railroad, 193 Mo. 482. (10) This case should be reversed, and, since the defendant has had its day in court, the verdict of the special jury should be reinstated and judgment entered thereon. Scullin v. Railroad, 184 Mo. 695; Heintz v. Railroad, 92 S. W. 353; Herdler v. S. & R. Co., 136 Mo. 3; Schmidt v. Railroad, 163 Mo. 645.

*Jefferson Chandler* and *T. M. Pierce* for respondent.

(1) The court did not err in holding that the case should not have been submitted to the jury at the close of the plaintiff's evidence. The physical facts and the testimony clearly showed that the plaintiff was the author of his own misfortune and that his injuries were directly caused by his own negligence in stepping in such close proximity to the defendant's car that it could not be stopped in time to have avoided striking him. Ries v. Railroad, 179 Mo. 1; Guyer v. Railroad, 174 Mo. 344; Schmidt v. Railroad, 192 Mo. 215. (2) It has ever been the rule in this State that there can be no recovery where the party injured gets upon a railway track at a public crossing or elsewhere without looking or listening for an approaching car, whether the defendant's negligence also contributed directly to produce her injury or not. Kelly v. Railroad, 75 Mo. 140; Maher v. Railroad, 64 Mo. 267; Harlan v. Railroad, 64 Mo. 480; Zimmermann v. Railroad, 71 Mo. 476; Hanselman v. Railroad, 88 Mo. App. 123; Skip-

ton v. Railroad, 82 Mo. App. 143; Molyneux v. Railroad, 81 Mo. App. 25. Likewise, it has been held that children and infants are chargeable with contributory negligence as a matter of law. Walker v. Railroad, 193 Mo. 453; Holmes v. Railroad, 190 Mo. 98; Graney v. Railroad, 140 Mo. 89; Payne v. Railroad, 146 Mo. 585. (3) It is a matter resting in the sound discretion of the trial court to determine as to the granting of a new trial, and all doubts as to the proper exercise of the discretion are resolved in favor of the action of such courts. Ins. Co. v. Curran, 45 Mo. 142; Baughman v. Fulton, 139 Mo. 557; Bank v. Armstrong, 92 Mo. 282. Even if the error pointed out in this instruction, taking all the instructions together, may not have been sufficient to reverse a judgment, yet, in support of the action of the trial judge, we must presume that the court, with its better knowledge of the trial, and the effect the error may have had upon the result, acted correctly. Bunyan v. Railroad, 127 Mo. 12. (4) The court erroneously instructed the jury. The trial court was manifestly correct in recognizing his mistake in having given instruction 1 for four reasons: First. Because it assumed as a matter of law that the motorman was negligent if he did not sound his bell or gong so as to give timely warning of the approach of the car. Koenig v. Railroad, 173 Mo. 725; Schmidt v. Railroad, 163 Mo. 645. Second. Because the instruction would warrant the jury in finding that the plaintiff was guilty of no negligence if he stepped in front of a moving car without looking or listening. Third. This instruction would also have warranted the jury in finding that the defendant was liable if it failed to sound a bell or gong as a warning to the plaintiff, whether such failure to sound a bell or gong was the immediate and proximate cause of the accident or not. Karle v. Railroad, 55 Mo. 477; Murray v. Railroad, 101 Mo. 236; Green v. Railroad, 192 Mo. 143. Fourth. There is no statement in

the petition that plaintiff by virtue of his minority was lacking in understanding of the danger of the situation, which he experienced, as stated in the record. There was no issue made in the pleadings of the want of capacity of plaintiff, and, hence, there was nothing to submit to the jury in respect of that matter. 1 Thomp., Neg., sec. 384. (5) The error of the court in submitting the instruction herein criticised was not cured by any instruction of the defendant. The doctrine of aider does not apply. Clancy v. Railroad, 192 Mo. 652; Stewart v. Anders, 110 Mo. App. 243; Hamilton v. Railroad, 89 S. W. 894. (6) The petition of plaintiff fails to state a cause of action. It is not alleged in the petition that the conduct of defendant caused the injury complained of. Beach, Cont. Neg., sec. 7; Allen v. Railroad, 183 Mo. 411.

LAMM, J.—George Deschner, a minor, through his mother, as next friend, sued defendant, a street railway company, for damages—counting on negligence. A special jury awarded him $5,000 and judgment went accordingly. Thereat defendant filed a motion for a new trial, which being sustained, defendant was eased of the judgment. Thereat plaintiff appealed from said order and seeks to retain his verdict.

The grounds upon which the court sustained the motion for a new trial are two, viz.: First, "that the court erred in refusing a peremptory instruction at the close of plaintiff's case;" and, second, "in the first instruction given,"—the referred to "first instruction" is one given on the court's own motion and will be set forth further along.

The case on the facts, in a nutshell, is this:

Manchester avenue runs east-and-west in St. Louis and is one hundred feet wide. Tamm avenue comes from the north, at an angle, into Manchester, and is forty feet wide. At the northeast corner of Tamm

and Manchester avenues is a mail box from which postal clerks on postal cars, run by defendant, take up mail. Along the north side of Manchester avenue are houses and a sidewalk, on the south side none, but defendant's double tracks are there laid, the south track for east-bound cars, and the north for west-bound cars. South of Manchester avenue is a strip of ground devoted to tracks of the Missouri Pacific railroad—a high fence separating this strip from Manchester avenue. Said grounds of the Missouri Pacific Railroad Company are bounded on the south by another fence, and south thereof and southeast of the mouth of Tamm avenue, in a back lot, plaintiff lived with his mother. About south of the mouth of Tamm avenue, and over the fence bounding the Missouri Pacific grounds on the south, is a stile to accommodate foot-travelers intending to go north and reach Manchester and Tamm avenues, or board defendant's cars. These same north-bound travelers, before reaching Manchester avenue, cross another stile, north of the former one and over the fence between Manchester avenue and the Missouri Pacific grounds. One descending this last stile, on the north side of the fence, faces west. Fifteen feet west of this stile is a platform for the accommodation of the traveling public in getting on and off defendant's cars, which platform is raised above defendant's track, say, a foot and a half. Connecting this platform with the stile last aforesaid are three planks laid lengthwise for a walk. The south rail of defendant's east-bound (or south) track is five feet from said fence. Said rail is very close to the platform, and is a little farther from the said walk connecting platform and stile. On defendant's said tracks, red passenger cars and white mail cars run.

An understanding of the *locus* is aided by the following diagram:

On February 18, 1901, George Deschner was about eleven years and a half old. From the evidence here, he seems to have been a sturdy and self-reliant little fellow, experienced for one of his age and familiar with the environment and the passage of cars there, having lived with his mother about 250 feet from the place of the accident for ten years, attending school in the third grade and, after school, busying himself in delivering milk to customers on Tamm avenue to aid in keeping the wolf from his mother's door. He had been at this for, say, four or five years.

After school was out, about four o'clock in the afternoon of said date, he took a two-gallon can, as usual, containing on that day a gallon and two pints of milk, and started from his mother's barn (shown on the diagram), crossing the south stile, the Missouri Pacific tracks and the north stile, as usual, into Manchester avenue and stopping on the walk connecting the north stile with said platform. It should be said that to the west of where he then stood and along the fence was a line (and maybe two) of telephone poles, 100 feet from pole to pole. The grade of defendant's tracks to the west is a one per cent up grade. At this immediate time there was a red passenger car running very fast down this grade from the west to the east and approaching George. This car was in plain view from Dale avenue, a block west. It "cut in" on the track shortly west of Dale avenue ahead of a mail car also bound east, and at or about the crossing of Dale avenue and possibly a ways east of Dale, there was testimony indicating the two cars were right close together.

We infer that the lad saw the passenger car, possibly when he was descending the steps of the stile. If not, he saw it when he reached the walk and it was then 160 feet away. But he was so situated with reference to this red passenger car that it hid the white mail car from his view—at least, he saw only the one. He put

down his can of milk and planted himself, he says, on the middle plank of this walk to let that car go by. When it went by, intent on his mission, he looked to the east to see if a car was approaching him ("come out," as he expressed it) on the north track, but he looked no more to the west. The south track being clear, as he supposed, and finding no car passing on the north track he picked up his can of milk and took three or four steps, he estimates, and then was in defendant's south track, where, in passing over, he was run down by said white mail car, which he had not seen or heard and which was, as said, following the red one to the east, was rolled, smashed and shoved under this car for twenty-five or thirty feet and when taken out was unconscious, with bones broken and other serious injuries.

As no question is made over the extent of his injuries, the details may be spared. His excuse for not looking to the west was that he did not expect one car to be so quickly following another on the same track, and he thought if there was no car coming out of the east on the north track, it would do to cross. There was a conductor, motorman and a postal clerk on this mail car, the postal clerk and the conductor being inside, and, as we understand it, the way to get in and out was by means of a side door. Whether there were windows in the car's ends does not appear.

It will not be necessary to swell the opinion with the details of the testimony. Suffice it to say plaintiff introduced testimony from eye-witnesses tending to show the motorman was not looking ahead, but was looking to the north or northeast towards the mail box as he approached said platform; that the car gave indications of a stop; that the postal clerk jumped out of the side door of the going car, west of the platform, and ran to the northeast towards the mail box, some of the evidence indicating he got very close to it, and

200 Sup.—21

there was testimony also that about this time the motorman appeared to be looking at the postal clerk running to the box.

Plaintiff introduced other testimony tending to show the postal clerk, or some else, hallooed that some one was under the car; that at this halloo the car stopped, the motorman got off and the postal clerk ran back and he and the motorman found plaintiff under the car. And plaintiff produced other testimony tending to show no gong was sounded at any time immediately before he was struck, though it was in proof on plaintiff's side that a gong had been sounded back at the Dale avenue crossing as a signal for the passenger car to clear the way. It stands substantially conceded that neither the conductor nor the postal clerk saw the boy before he was seen under the car.

The evidence of the conductor and the motorman, testifying on behalf of defendant, tended to show the gong was sounded constantly as it approached and ran by the platform. The testimony of the postal clerk was to the effect that he did not remember to have heard a gong. The testimony of all three was to the effect that they did not intend to stop the car there for mail on that trip, and that while the postal clerk did get out of the car, yet he did not do so until the car was stopped by the motorman, that he did not go to the mail box, but got out because of the sudden stop and then the motorman informed him he had "run over a kid." The motorman testified the boy was standing on the platform and not on the walk, that he had his eye on him for 100 feet, and that when he got within three or four feet of him the boy, who had been facing north, threw his head over his shoulder to the east and went on the track immediately in front of the car. Whereat, the motorman says, he stopped his car (then running at seven or eight miles an hour) as soon as his instant and full use of all the appliances at hand would permit.

There is a conflict in the testimony as to the distance the red car was from the white one at the time plaintiff stepped on the track and was struck. The motorman testified he was a block behind the red car "all the way," meaning, we suppose, from Dale avenue down to the platform. The testimony of plaintiff's eye-witnesses did not make the distance so great. One of the plaintiff's witnesses testified the cars were ten, twelve or fifteen feet apart at a point 250 feet west of Tamm avenue or the platform; but he said that when the white car reached Tamm avenue the red car had nearly got to Knox avenue, a "long block" away. Another of plaintiff's witnesses testified the red car was one-half block distant from the white one, but we cannot tell from the printed abstract at what point his observation was made.

None of plaintiff's eye-witnesses saw him get on the track or saw him hit. So, too, the case is barren of any evidence indicating it was possible to stop the car after George was in actual peril. Moreover, there was no evidence the mail car was running on any schedule time and there is not a particle tending to show it was usual for one car to follow another so quickly at that point. Nor was there any evidence showing the number of people who frequented the platform and walk and who got on and off cars there, or whose presence might be expected with reasonable certainty. Nor was there any evidence of any ordinance regulation relating to sounding a gong at any designated place or under any designated circumstances—for instance, at the intersection of streets. There is, however, evidence abstracted falling from the lips of the motorman and tending to show that he always sounded his gong when approaching a "street" and that he considered the point of the accident filled that bill and sounded his gong there at that time in accordance with custom. The motorman testified he held the strap to the gong

in his hand at the time, and says he knew what use the platform and stile were put to, *i. e.,* that passengers got on and off there. The significance of all this crops out in connection with instruction numbered 1, given by the court, and then stamped as erroneous on the motion for a new trial.

So much for the facts.

The case was tried on paper issues that may be summarized as follows: the petition, among other averments of negligence, counted on the negligent violation of an ordinance known as the Vigilant Watch ordinance, the material portion of which is as follows: "The conductor, motorman, gripman, driver or any other person in charge of each car shall keep a vigilant watch for all vehicles and persons on foot, especially children, either on the track or moving towards it, and on the first appearance of danger to such persons or vehicles, the car shall be stopped in the shortest time and space possible." The petition further proceeds on the theory that Tamm avenue "intersects" Manchester avenue at the point in question; and after setting forth the Vigilant Watch ordinance and alleging a negligent violation of the same in its requirement of a vigilant watch, as well as its requirement of stopping, it proceeds as follows: "And the said motorneer negligently failed to ring the gong or bell, or give the plaintiff any warning of his approach, and the said motorneer negligently failed to keep his car under control when approaching the intersection of a public crossing greatly frequented by foot passengers, and he negligently failed to observe the provisions of the ordinance heretofore mentioned, all of which directly contributed to cause the injuries hereinafter complained of."

The answer was a general denial, and also pleaded new matter, in substance and effect constituting a plea of contributory negligence.

The reply was a general denial.

I.  On this record did the court err in setting aside the verdict on the first ground, to-wit, that plaintiff had no case and the demurrer should have been given? We think so.  And this, because:

1.  The issue of contributory negligence, under the foregoing facts, was for the jury and was not a question of law to be determined by the court.  It may be conceded for the purpose of this case that an adult person, acting as plaintiff did, to-wit, failing to again look to the west to see if another car was following the passenger car on the south track, would have been guilty of negligence deemed in law the proximate cause of his resulting injuries—though this concession is only made for the purposes of this case, since much may be said, and possibly soundly said, on the other side.  See remarks of BLAND, P. J., *arguendo,* in Moore v. Railroad, 95 Mo. App. l. c. 736-7.

2.  But George Deschner was not an adult.  He was a capable boy of more experience with tracks and cars and in taking care of himself than the average boy of his age, but nevertheless he was a child in judgment, in prudence, in forethought, as well as in years, and must be dealt with as such.

It has been held that a railroad track itself is a sign of danger.  It has been held that the danger of going upon such track without looking at all is one so apparent as to be within the easy comprehension of a child of the age of plaintiff.  A boy, raised in a city and living for years in proximity to steam and street railway tracks, knows as well that a car will kill him or maim him if it strikes him as he does that he will get burned if he pokes his hand in the fire.  So that, the law does not excuse a boy of his age in not using his eyes in so simple a matter as looking for the approach of a car when he is about to enter upon a track laid for cars and on which they, to his knowledge, run with more or less frequency.  [Payne v. Railroad, 136 Mo. 562;

Graney v. Railroad, 140 Mo. 89; Graney v. Railroad, 157 Mo. 666; Walker v. Railroad, 193 Mo. l. c. 480, *et seq.;* Spillane v. Railroad, 135 Mo. l. c. 424, *et seq.*; Holmes v. Railroad, 190 Mo. 98.]

But no two cases are as like as two peas. What is contributory negligence as a matter of law in one case, where the problem is simple, may be less as a matter of law in another, where the problem is more confusing and complex. This boy did look. He looked for a car coming out of the west, and saw one. He looked for one coming out of the east, but saw none. He covered both tracks with his eye. Not only so, but he waited until the east-bound car passed. The question in this case is not whether as a matter of law he would have been guilty of contributory negligence if he had not looked once, but the question is whether this child as a matter of law should be held guilty of contributory negligence for not looking *twice*. This is a much more complex proposition than not looking at all; for whether a boy would look twice would depend upon the frequency with which cars, to his knowledge, followed each other upon the same track—the one closely behind the other. It would depend, too, on the boy's quickness of thought, his mental grasp, his coolness and precision of judgment, and, more than all, on that absence of impulsive and bounding thoughtlessness and lack of disposition to be worried by cares and responsibilities, which, say what we will, is one of the charms of buoyant youth— the loss of which makes a child prematurely and sadly old.

As an abstract proposition, the need and likelihood of cars following each other so closely might not appeal to a small boy. Longer experience with and closer observation of the facts might teach such boy there is often a congestion of cars, that they are frequently off schedule time, and may naturally be expected to run at each other's heels. But such condition of things

(being out of the ordinary) is confusing even to a man, and it is within common observation that it catches such a one on the hip, now and then, unaware. Here there was no proof this boy had seen mail cars follow passenger cars so closely. There was no proof he ever saw two cars of any class follow each other so closely at that point, and, if there had been such proof, we would not be willing to say as a matter of law that, in taking it for granted the ordinary and usual condition of things would exist at that time, namely, that there would be a pronounced distance between two cars going the same way on the same track, the plaintiff was guilty of negligence. Such conduct may be very well within the conduct of a reasonably prudent boy eleven and a half years old.

The judgment of a boy must not be measured by the same yard-stick with which the law measures the judgment of a man. To make a man out of a boy seems to be the somewhat miraculous work of time and nature, but we consider it beyond the power (and should be beyond the disposition) of the law. So that, if a boy eleven and a half years old acts with the prudence of the ordinarily prudent boy of that age, under like circumstances, it is well enough; and in this case whether plaintiff did so act could be better determined by jurymen who see and hear him than by this court who did neither.

The rule is that, taking a boy as a boy and a man as a man, where there can be, not one view, but two views fairly entertained by reasonable men of a given line of conduct, the issue is for the jury and not for the court. [Holmes v. Railroad, supra; Campbell v. Railroad, 175 Mo. 161; Walker v. Railroad, 193 Mo. l. c. 482, 483; Young v. Waters-Pierce Oil Co., 185 Mo. l. c. 667; Erickson v. Railroad, 171 Mo. l. c. 659, 660.]

The jury were properly instructed on the question of contributory negligence. They found that issue in favor of plaintiff and we see nothing in the record upon

which to predicate a disturbance of that finding. Hence, there was error in granting a new trial, unless the lower court may be sustained on other grounds.

II. Assuming, under the finding of the jury, there was no contributory negligence in this case, the next question is, was the jury properly instructed on the negligence, if any, of defendant? Defendant's main contention on this score is that the court erred in giving instruction numbered 1 and, *ergo,* did right when it corrected its own error.

In developing this contention, it is argued by defendant that the court erroneously assumed it was negligent not to sound a bell so as to give timely warning of the approach of the car. Defendant contends the fact of negligence should have been submitted to the jury and not assumed by the court.

Instruction numbered 1 reads thus:

"If you find from the evidence that the plaintiff used ordinary care (that is, such care as an ordinary careful boy of his age and intelligence would use under similar circumstances), in stepping upon the track in front of the mail car without first looking west to see if a car was coming, and if you further find from the evidence that the motorneer did not sound his bell or gong so as to give timely warning of his approach, and that if he had done so the boy would have been warned in time to have kept out of danger, then plaintiff is entitled to a verdict."

(a) It will be seen at a glance that the instruction assumes it was the duty of the motorman under the circumstances of this case to sound the gong at the point in hand, and if he did not do so it was negligence. Did the court do right in that assumption under the peculiar facts here?

It will be better in considering this contention to go back a little. It seems, after plaintiff introduced the Vigilant Watch ordinance, the effect of that ordinance

was entirely instructed away and taken out of the case. Now, in so far as the Vigilant Watch ordinance provided that "on the first appearance of danger to such persons or vehicles, the car shall be stopped in the shortest time and space possible," the court did exactly right, since there was no evidence that this car was not stopped in the shortest time and space possible, and, hence, plaintiff could not recover on that theory.

But that was not all there was of heart and substance in the Vigilant Watch ordinance. That ordinance provided that "the conductor, motorman, gripman, driver or any other person in charge of each car shall keep a vigilant watch for all vehicles and persons on foot, especially children, either on the track or moving towards it"—the other provision, relating to stopping on the first appearance of danger, is an added duty. While the whole of this ordinance has been sustained on the theory that it is enacted under the police power of a city, yet in substance and logical effect both duties, the duty of a vigilant watch, especially for children, and the duty to stop as soon as possible on the appearance of danger, may be well sustained as simply declarative of the common law.

To hold that a motorman, driving a killing machine on iron rails in the people's highway, should keep a vigilant watch for everyone moving towards the track, especially children, is as much as (and no more than) to say that humanity and common sense dictate such course; and to hold such to be a duty, even in the absence of an ordinance, would not strain, let alone break, the common law applicable to crowded cities and the use of a highway, common not only to street railways under their easement but, primarily, to all travelers. Indeed, if an elder equity is held to be a better equity, why may not an elder, a primary and a necessary use (a use that is the prime condition precedent— the *raison d' etre*—to any street) be held to be some-

what superior to a subsequent one created by. easement and carved out of the common people's common inheritance, to-wit, their right to safely come and go on a public thoroughfare? Showing the pre-existing, dominant idea of public use, it has been held that a city council has no authority to establish a street for the use of a business corporation or an individual, but that the right to establish a street is traced back to the need of the public at large. [*In re* Twenty-first Street (Kansas City v. Hyde), 196 Mo. 498; see, also, Scullin v. Railroad, 184 Mo. 1. c. 704, et seq. and cases cited.]

We think the court erred in not submitting to the jury a rule of law embodying the duty of the defendant to keep vigilant watch, especially for children approaching a track, as plaintiff prayed it to do.

But the foregoing determination is not decisive. The question still remains, was the instruction, as given, a correct one? Let us see. On plaintiff's theory the motorman neither saw the child nor rang the gong; on defendant's theory the motorman did both. . On plaintiff's theory it was the duty of the motorman to see the child and to ring the gong; and on defendant's theory, below, as shown by its course at the trial, it was the duty of the motorman to do both. Why then waste time with a discussion on the existence of a duty, assumed to be a duty by both litigants and assumed to be a duty by the court, and by defendant in its instructions? It is true the evidence does not show the extent of the presence of people at and about this platform, but yet people had the right to be there. Not only so, but they were invited there by defendant itself. That it owed a duty to look out for them and, by warning, protect them from danger, is too plain for argument. So that, whether that duty arose as a general duty on account of its being a street, or on account of its being an intersection of two streets, or on account of its being a place provided by defendant for travelers to con-

gregate and to get on and off its cars, or whether it arose in this specific instance because of the known presence of this boy with a can of milk, evidently bent on a mission to cross and temporarily arrested in that mission by the passage of the first car, is of small moment.

If defendant was causing the gong to be sounded as it approached and passed the platform, it escapes liability under the fact here. So the court instructed the jury. If, however, the gong was not sounded, as some .of the evidence indicates, and if there was an appreciable time and distance in which it might have been sounded by the use of ordinary care after the lad resumed his journey or showed an indication of doing so by picking up his can of milk, and before he got into peril, then the defendant may be liable if its failure to sound the gong was the proximate cause of the injury. The case proceeds upon the theory on both sides that a very few steps and a very short time took the boy into peril. On this account, while the matter becomes close and narrow, yet we think the evidence on all hands shows the boy out of danger at one time and shows that it took an appreciable time for him to get into danger after his stop, and, therefore, during that appreciable time, in which by his movements in picking up the can and directing his steps towards the track he showed he was about to cross, he was entitled, as a matter of law, to a warning that this car proposed to occupy the very spot he was entering upon. It is true the car could not stop, but inability to stop does not measure the full duty of defendant in such case. The car was equipped with a bell, the strap to that bell under this evidence was in the motorman's hand, and in case of a car going as this one was, twice as fast as a man could walk, there was time enough and space enough while the boy picked up his can and took those

steps to have warned him, and, therefore, there was negligence in not warning him.

Not only so, but as the instructions on both sides proceed on the theory that it was the duty of the motorman to see the boy and warn him, and the case was tried on that theory below, the contention now under consideration is controlled by the wise and stiff rule of appellate practice that a case should be heard here upon the same theory it was heard below. [Walker v. Railroad, 193 Mo. l. c. 483, *et seq.*]

Where the facts are undisputed, an issue may be dealt with as a question of law. A court, in a given instance, may say certain acts constitute negligence. In another instance, it may say certain acts constitute contributory negligence. In yet another instance, it may say that given acts constitute neither negligence nor contributory negligence. Now, in this case, the question of warning was a disputed fact, and, therefore, the court submitted that issue of fact to the jury by instruction numbered 1. But the evidence is substantially one way that there was time and space in which to warn this boy by a gong after he started to this track and, as said, we are not willing to say the court might not assume it is negligence not to do so.

Accordingly, we hold in this case that the instruction under review, which assumes it was the defendant's duty to warn the boy and assumes it had time and space to perform that duty by the use of the gong, was not a vicious instruction. The learned trial judge had a first impression of his right to make those assumptions, and that first impression was the best, as first impressions not infrequently are.

(b) Defendant's learned counsel assail instruction numbered 1 from another side. They argue the instruction is erroneous in not submitting to the jury the issue of the proximate cause of the injury. Is there substance in this argument?

The mere proof of negligence is not sufficient to support a verdict. It is one step, but there is another, to-wit, the causal connection between the negligence and the injury. [Harper v. Terminal Co., 187 Mo. 586.] The triers of fact must find the pleaded negligence was the proximate cause of the injury before a recovery will lie, and, of course, that issue should be put to them. Now, that issue was hinted at in the instruction under review, but was not plainly put to the jury. The jury were simply told by that instruction: "and that if he had done so" (*i. e.,* if the motorman had sounded the gong so as to give timely warning of his approach) "the boy would have been warned in time to have kept out of danger, then," etc. But what the jury saw in the court's instruction through a glass darkly, they saw face to face when the whole body of the law was declared to them by the reading of defendant's instruction numbered 4, which runs as follows:

"Before the plaintiff can have a verdict in this case, the law requires him to prove to your satisfaction, by a preponderance or greater weight of evidence, negligence (of the kind submitted to you) on the part of defendant, and also that such negligence (if any is proved) was a proximate cause of the accident and hurt received by plaintiff; and if the plaintiff has not so proved negligence of the kind submitted to you, on the part of defendant, or its motorman in charge of the mail car, and that such negligence was a proximate cause of the accident, then your verdict must be for the defendant."

In the light of this instruction of defendant, all darkness in the court's instruction numbered 1 faded away, even as the morning sun dispels the fog. The issue of proximate cause was flatly put to the jury and under the doctrine of aider, the point in hand is also ruled against defendant. [Lee v. Railroad, 195 Mo. l. c. 426, *et seq.*]

III.  But, defendant's learned counsel say, if there was error in granting a new trial on the two assigned grounds, there are other substantial reasons for granting a new trial; and if the court did right but gave a wrong reason, still its ruling should stand.  This is so. [Emmons v. Quade, 176 Mo. l. c. 28-9; Mockowik v. Railroad, 196 Mo. 550.]

One of these unassigned reasons, deemed by defendant's counsel sufficient, is that the petition did not state a cause of action.  The argument hinges on the fact that the petition alleged several pretermitted duties and averred several acts of negligence and follows these allegations with this averment: "All of which directly contributed to cause the injuries hereinafter complained of."  Defendant's counsel argue that by that allegation plaintiff should be held to have pleaded his own contributory negligence and thus stated himself out of court.  That is, if defendant's complained-of acts merely "contributed" to cause the injuries, then the petition (*ex vi termini*) proceeds upon the assumption that acts of plaintiff caused the injury with defendant's acts merely contributing thereto.  Which theory is ingenious and happy as a fanciful conceit and does credit to the acumen and versatility of learned counsel.  But, however much the judicial mind may be diverted, it is not convinced thereby.  It might be if defendants, in cases of personal injuries, by a long and exclusive use of the words "contributed," "contributing," and "contributory," in connection with negligence, would be held to have filed a *caveat,* as it were, or taken out a copyright on that use, that then a plaintiff would be precluded from safely using the same for any purpose, and the argument would have force.  Indeed, contributory negligence may well have come to be looked on as a valuable asset of all defendants in such pickle.  But, reading the allegation with its context, it is plain that plaintiff was entitled to use the

word "contributed" without thereby implying his own negligence. The allegation means that the pleaded acts of negligence contributed *with one another* to form an aggregation—that is, like rills flowing into a common reservoir of negligence—which accumulation of negligences caused plaintiff's injuries; and the allegation was, therefore, well enough.

Other reasons for sustaining the lower court are suggested and have been examined, but we deem them without persuasive merit.

Our conclusion is that the court erred in its order granting a new trial. That order is, therefore, reversed and the cause is remanded with directions to set aside the order granting a new trial and reinstate the verdict and the judgment of plaintiff as of the date originally entered, so the judgment may bear interest from that date—the latter to avoid the trouble referred to in Scullin v. Railroad, 192 Mo. 1.

All concur.