## CORNOVSKI et ux. v. ST. LOUIS TRANSIT COMPANY, Appellant.

**Division One, November 27, 1907.**

1. **NEGLIGENCE: Danger Line: Curb: Assumed in Instruction: Child:** Danger to a four-year-old child and the duty on the motorman's part to keep a vigilant watch began the very instant the child left the curb line and started towards the car track over the twelve intervening feet of the street; and an instruction which assumed that the danger line for such a child began at the curb line and was continuous from there to the track is not erroneous, for it is a fact about which in the minds of all reasonable men there is no controversy.

2. ———: ———: ———: ———: **Not Assumed.** But in this case the instruction did not assume that the curb line was the danger line and the intervening space of twelve feet between it and the car track a danger zone, by referring generally to the child's "crossing said street and in a position of danger of being struck by said car", for that meant that the place of danger was wherever the jury should locate it.

3. ———: **Instruction: Proximate Cause.** The use of the words "proximate cause" in an instruction is not to be commended. If in fair logical intendment the instruction puts to the jury the causal connection between the negligence of defendant and the injury of the injured party, the omission of the words "proximate cause", etc., is not error.

4. ———: ———: ———: **Aided by Defendant's.** An instruction for plaintiff which only feebly or obscurely or impliedly puts the question of causal connection or proximate cause to the

jury is cured by one for defendant on the same subject which clears up all obscurity and removes all doubt.

5. ———: **Omission of Duty: Proximate Cause.** Where the failure of defendant to discover the child's danger was the result of the lack of the due care required by the law, and where a due observance of that duty would have avoided the injury by the use of reasonable care, such omission of reasonable care is in law the proximate cause of the injury.

6. ———: **Injury to Child: Contributory Negligence of Parents: Use of Words "In Their Circumstances in Life" In Instruction.** Plaintiffs' child four years old attempted to cross the street in front of a car and was killed. There was sufficient evidence to support the charge that the motorman was not keeping a lookout for persons about to cross the track and did not see her until after she was struck. One of the defenses was that her parents (the plaintiffs) were guilty of contributory negligence in permitting her to be on the street after dark unaccompanied by any person of mature years. The employments and duties of her parents at the immediate time she escaped to the street were before the jury. *Held*, that an instruction for plaintiffs on the subject of the contributory negligence of her parents which required the jury to "consider whether or not they exercised that degree of care, caution and watchfulness over their said child which was reasonable and proper for parents in their circumstances of life as shown by the evidence", was not erroneous, and if erroneous the error was harmless, although in the opinion of two of the judges the words "in their circumstances in life" ought not to have been used, and in a close case would invite serious consideration.

Appeal from St. Charles Circuit Court.—*Hon. H. W. Johnson*, Judge.

AFFIRMED.

*Edward T. Miller* and *T. E. Francis* for appellant; *Boyle & Priest* of counsel.

Instruction 1, given for plaintiffs, is erroneous. (a) It is so worded as to direct the jury to find for plaintiffs if they believe the car could have been stopped after the deceased child started to cross the street and before she was struck, thereby assuming that she

was in a position of danger the moment she started to cross, instead of leaving that question to the jury to determine as an issue of fact.    (b)   It did not require the jury to find that defendant's negligence  was the proximate cause of the injury.   Harper v. Terminal Co., 187 Mo. 586.    (2)   Plaintiffs' instruction 3 is erroneous.   (a)   Because it directed the jury, in determining the issue of plaintiffs' contributory negligence, to take into consideration their circumstances in life.   Fox v. Railroad, 118 Cal. 55; Mayhew v. Burns, 103 Ind. 339; Railroad v. Pitzer, 109 Ind. 179; Railroad v. Emmelmann, 108 Ind. 530; Hogan's Petition, 5 Dill. (U. S.) 96; Hinds v. City of Marshall, 22 Mo. App. 215.    (b) Because there was no evidence tending to show what plaintiffs' circumstances in life were.   "An instruction which submits issues to the jury without any evidence upon which to found it is erroneous."   Hinds v. City of Marshall, 22 Mo. App. 214; Evans v. Railroad, 106 Mo. 594.

*Wm. L. Bohnenkamp* and *Wm. R. Gentry* for respondents.

(1)   The instruction does not authorize the jury to find that plaintiffs' child was in a position of danger the moment she started to cross the street.   It requires the jury to find that the motorman saw, or by keeping a vigilant watch could have seen, her crossing said street and in a position of danger of being struck by said car.   Under the wording of this instruction, the motorman was not obliged to attempt to stop his car until the child was actually in a position of danger, and it was left with the jury to find where that position of danger was.   As a matter of fact, we do not see how two reasonable minds could differ upon the proposition that at the very instant when a three-year-old child started to toddle across the street, following an older child who crossed the track ahead of her, the little child

was in danger, for the car was approaching rapidly toward the very point toward which the little child was moving. The instruction is practically identical in wording with instructions approved in the following cases: Livingston v. Railroad, 170 Mo. 452; Hilz v. Railroad, 101 Mo. 40; Klockenbrink v. Railroad, 686; Rapp v. Railroad, 190 Mo. 160; Fiedler v. Railroad, 107 Mo. 645; Gill v. Railroad, 101 Mo. App. 61.    (2) The third instruction is a literal copy of an instruction approved in cases decided by the Supreme Court of the State of Missouri. They are as follows: Levin v. Railroad, 140 Mo. 624; Czezewzka v. Railroad, 121 Mo. Defendants have frequently been shocked by the use of such expressions as "conditions in life," "circumstances in life" and "situation in life," but it has been held again and again that it was not error to use such expressions. See the following personal injury cases in which such expressions are used in the measure of damages and in which the judgments are upheld: Thomas v. Railroad, 20 Mo. App. 485; Russell v. Columbia, 74 Mo. 480; Smith v. Butler, 48 Mo. App. 663; Mitchell v. Plattsburg, 33 Mo. App. 555; Ward v. Steffin, 88 Mo. App. 576. But, say appellant's counsel, even if it is correct to give such an instruction in a proper case, there is no evidence in this case on which to base it.    We submit that there is all the evidence in this record which it would have been proper to offer tending to enlighten the jury on that subject. But plaintiffs were entitled to recover in the case at bar under the humanitarian doctrine, even if they had been guilty of negligence in the care of the child. Czezewzka v. Railroad, 121 Mo. 201; Levin v. Railroad, 140 Mo. 624; Isabel v. Railroad, 60 Mo. 480; Frick v. Railroad, 75 Mo. 595.

LAMM, J.—Plaintiffs, husband and wife, the parents of Esther Cornovski (the said Esther having been

run over and killed by one of defendant's cars on the evening of the 18th of March, 1903, in the city of St. Louis), sued defendant for statutory damages as for her wrongful death, and recovered a judgment for $5,-000. Perfecting an appeal on due and seasonable steps, defendant brings the cause here for review.

One of the charges of negligence related to a negligent failure to put in motion and drop the fender on the car, as provided in a city ordinance. This charge was taken from the jury by instruction. Another charge of negligence was a failure to sound the gong or give any other warning to the deceased of the danger from an approaching car. That charge also was taken from the jury by instruction.

Esther was a minor of tender years. She was killed on Eleventh street, and the ground of negligence charged in the petition and put to the jury was a violation of an ordinance of the city of St. Louis known as the Vigilant Watch Ordinance, in that defendant's motorman "negligently and carelessly failed to keep a vigilant watch for all persons on foot, and especially the daughter of these plaintiffs, moving towards the track or upon the track, and that said motorman failed on the first appearance of danger to the daughter of these plaintiffs to stop the said car within the shortest time and space possible."

The defense interposed was a general denial and a plea of contributory negligence, viz., that the child's death was caused by the negligence of her parents in that she was of immature years and they allowed her to be upon a street after dark where they knew street cars were being operated, unaccompanied by a person of mature years.

Defendant demurred to the evidence at the close of plaintiffs' case and again at the close of the whole case. These demurrers were overruled and defendant saved

an exception, but does not assign error here on said rulings.

The case is presented to us on the theory that plaintiffs made a case for the jury, and the errors assigned pertain to the *way* it was put to the jury. In this condition of things, the determination of the case may proceed understandingly by fetching a small compass on the facts. Thus:

Esther was two or three months short of four years old. She was struck and literally cut to pieces on the evening of March 11th, 1903, between half past six and seven o'clock by a street car manned by defendant's employees. Defendant had a single track on Eleventh street, used for south-bound cars. Plaintiff, Hymen Cornovski, kept a grocery store on the east side of that street—the wife helping in the store. They lived back of the store, at least they ate there, and possibly had their living and sleeping rooms over the store. There was a little, narrow yard, so called by courtesy, between the cooking and eating apartments and the store proper, or back of all of them, and this yard was connected with Eleventh street by a passageway shut off from the street by a gate.

On the evening in question some of the plaintiffs' children had been upstairs taking a music lesson. The music teacher, passing out on the street, saw Esther sitting quietly on a box in front, and the child threw her a kiss. It seems she had been in the kitchen with her mother, who had just washed her face, combed her hair and given her her supper and then told her to tell the other children to come to the table. The mother, busy and preoccupied with her evening household cares, for the instant forgot the child, who went out the back door and into said yard. Soon the mother, hearing screaming in the street, ran out and learned her daughter was dead. She testified the family were new and strange on the street; Esther wasn't used to it; they

had moved there in January past, in the winter time; and that when she played out doors it was always in the little yard. The mother did not know she had gone on the street. The father said, in substance, that he was busy in the store waiting on customers and vending his wares; that glancing out of the front window or door he saw Esther sitting on a little box, hard by the door, a few minutes before she was killed. This was the last time he ever saw her alive, and then she was alone. He did not see her in the street that evening, and never saw her cross it before at any time. It appears, as of course, that both parents knew that defendant's cars ran on a schedule of short intervals on Eleventh street.

There was a fire-engine house opposite, or nearly opposite, Cornovski's place. Its door was open, the evening was mild and bright. What lured the child across the street is unknown; but she did cross it and was seen on the west side by the engine-house, going along the sidewalk with another girl aged about seven—a neighbor's. From the west curb to the nearest rail of defendant's track was twelve feet. Presently these children left the west sidewalk and ran from the curb, somewhat diagonally, east toward Esther's home. The elder girl, being in advance, crossed the track and escaped the oncoming car, but Esther was caught and killed at the west rail.

On plaintiffs' side it was shown that, when the children left the curb and passed towards the track, the car was about sixty feet away. *Contra,* there was evidence on defendant's side that it was only about twelve or fifteen feet away. No witness placed the speed of the car in excess of seven miles an hour. There was a very small grade, if any, at the place of the accident—a very slight dip down. The car was equipped with an "ordinary goose-neck hand-brake, an ordinary controller and an ordinary reverse." The

street was in good condition, the track dry; and in this condition of track, grade and appliances, the car, according to plaintiffs' experts, could have been stopped within fifteen feet. According to defendant's experts, it could not have been stopped within less than forty or forty-five feet. On plaintiffs' side there was evidence tending to show that for a little while before the child was struck, and up to the very instant, the motorman was inattentive to his duties. He was at his post, possibly, but did not have a hand on the brake or controller, was not looking in front and did not see Esther at all. One of plaintiffs' witnesses, riding on the front platform with the motorman, said that employee was looking back "as if he was looking back to see something just before the accident happened." Then there came a halloo or a scream, and the motorman "made a sudden dash for the brake." As he grabbed the brake, he asked the witness "what was the matter, what was the trouble, and wanted to know if he had run over somebody, was somebody hurt?" Two of plaintiffs' eye-witnesses said the motorman seemed to be looking sideways towards the engine-house, west, and not to the front or towards Esther. *Contra,* on defendant's side it was shown that the motorman was at his post of duty, was keeping a vigilant watch ahead of him at the time, and that at the instant the children left the sidewalk he saw them and at once applied the brake, reversed his power and did everything possible to stop without avail.

There was undisputed evidence that the immediate place was "thickly populated, and of a pleasant evening there were always large crowds of children around there." On that particular evening it was as usual.

Plaintiffs were allowed three instructions (number one and number three being excepted to), viz.:

1. "If the jury find from the evidence that on the 18th day of March, 1903, the defendant was using the

car mentioned in the evidence; and if the jury further find from the evidence that on said date the plaintiffs were husband and wife and were the father and mother of the child Esther Cornovski, and that said Esther was then a minor and unmarried; and if the jury further find from the evidence that at said time Eleventh street, at the point mentioned in the evidence, was an open public street in the city of St. Louis; and if the jury further find from the evidence that on said day, while the plaintiffs' said child, Esther, was attempting to cross Eleventh street, she was run over and killed by the car mentioned in the evidence, which was being operated by the defendant, St. Louis Transit Company, through its motorman; and if the jury further find from the evidence that the said motorman in charge of said car, saw, or by keeping a vigilant watch, would have seen the plaintiffs' said child, Esther, crossing said street and in position of danger of being struck by said car, and by stopping said car within the shortest time and space practicable, under the circumstances, with the means and appliances at hand, by the exercise of ordinary care consistent with the safety of said car and of the persons on said car, could have avoided running over and killing said child, and neglected to do so, then plaintiffs are entitled to recover of the defendant the sum of five thousand dollars unless you further find from the evidence that the plaintiffs, or either of them, were guilty of negligence in the care and custody of their child, which contributed to cause the death of said child.''

2. ''By the term 'ordinary care' as used in these instructions, is meant such care as would be exercised by a reasonably prudent person under the same or similar circumstances.''

3. ''The court instructs the jury that in determining whether or not the plaintiffs contributed by their negligence in the custody and care of their child, Es-

ther, to her injury and death, you are to consider whether or not they exercised that degree of care, caution and watchfulness over their said child, Esther, which was reasonable and proper for parents in their circumstances in life as shown by the evidence.

"You are further instructed that the burden of proving contributory negligence on the part of the plaintiffs, rests upon the defendant."

The defendant prayed twelve instructions—all of them allowed. Of that series, those numbered 4, 5 and 6 bear somewhat on the contentions made here. They run as follows:

4. "The mere fact, if true, that the said Esther Cornovski was injured and killed by a car of defendant, gives plaintiffs no right to sue defendant and recover damages. Before, under any circumstances, plaintiffs are entitled to a verdict, you must find from the evidence that the injuries and death of the said Esther were actually caused by the negligence of defendant in the manner submitted to your consideration in these instructions. If her injury and death were not actually caused by such specified negligence, then plaintiffs have no case and cannot recover, even if the said Esther was injured and killed by being struck or run over by defendant's car. But even if you find that the said Esther was injured and killed by such negligence, still plaintiffs cannot recover if, by their own act or conduct, as specified in instruction numbered 1 given on behalf of defendant, they negligently contributed to her injury and death."

5. "The court instructs the jury that they cannot infer negligence from the fact that the plaintiffs' child was injured by the defendant's car, but that the negligence charged against defendant is a fact which must be proved and the burden of proving same by the greater weight of the evidence is upon the plaintiffs."

6. "While the burden of proof is upon the defend-

ant to establish the contributory negligence of plaintiffs, yet, this does not relieve plaintiffs of the burden of proving that the injury and death of the said Esther were solely caused by the negligence of defendant as set out in other instructions. The burden of proving that fact rests upon the plaintiffs throughout the whole case, and if the jury find that the negligence of plaintiffs, as set out in the other instructions, either in whole or in part, caused, or directly contributed to cause the injury and death of the said Esther, then your verdict must be for the defendant.''

On the foregoing record, defendant assigns error, viz.:

Error in giving instruction *one,* for that (a) it assumes the child was in a position of danger the moment she started across the street, instead of leaving that question to the jury to determine as a fact, for that (b) the instruction did not require the jury to find that defendant's negligence was the proximate cause of the injury.

And error in instruction *three,* in that (c) it directed the jury in determining the issue of contributory negligence to take into consideration plaintiffs' ''circumstances in life.'' And (d) if that were proper, then there was no evidence tending to show what plaintiffs' circumstances in life were, *ergo,* there was no testimony in support of the instruction.

Of these *seriatim.*

I. Assuming for the nonce that the instruction itself assumed the curb line was the danger line, then, to say whether an assumption is erroneous, the state of the proof in the identical case made is a prime prerequisite to correct judgment. Where the evidence is undisputed, is one way, and of such brand of cogency that but one just conclusion can be drawn from it by any rational mind, or where the thing proves itself, the court may deal with it as a matter of law. Why, in-

deed, frame an issue for a jury in a practical tribunal, administering the laws of a practical people in a practical way, requiring that jury to find and solemnly determine a fact not a fit subject of controversy and which can be determined only one way by all just men? If Esther had been an adult in the possession of mature judgment, or had passed the years of infancy and was arriving at years of judgment and sense, then, unless the motorman saw she was bent on crossing the track and was oblivious to her danger, it would have been error to have assumed that she was in danger from the very time she left the curb until she reached the track. Where the danger-line would lie (with reference to the running of street cars) for an adult, or for one possessed of some years and some discretion, in crossing the street, might very well be a matter of difference between good average men, and therefore, a question for the jury. Now, the sidewalk of a street is for foot travelers—children and grown. Between the curbs is for traffic; there, horses, wagons, vans, carts and cars pass to and fro and the wheels of commerce go clattering and roaring round and round in a confusion as bewildering as the wheels in Ezekiel's vision. Our very instincts teach us that when a four-year-old child, unattended, leaves the curb of a sidewalk—that is, leaves a place of comparative safety—and. heads across a street devoted to traffic in a great city, with a car track twelve feet away on which a car is approaching (as here) the little one as surely and instantaneously plunges into danger as that the square of the hypotenuse of a right-angled triangle equals the sum of the squares of the other two sides, i. e., speaking broadly, it is axiomatic. Danger to the child and duty on the motorman's part began the instant such a child left the sidewalk, bound headlong for the track. [Cytron v. Railroad, 205 Mo. l. c. 720. See, also, Livingston v. Railroad, 170 Mo. 452.]

The finding of twelve men in the box on that ques-

tion under this record would not instruct any court, or subserve any purpose of the law. And this is so because the thing speaks for itself, and in speaking it says, as well before as after a jury's finding, that as for Esther the curb was the danger-line. It would be no more sensible to put that question to the jury than it would be to put to them to find where the danger-line in firing a barn was chalked out when a burning brand was cast into a mow of tow, or where such line lies when an infant is in a den of asps or rattlesnakes. If, then, the learned counsel for defendant are right in their contention that plaintiffs' instruction numbered one assumes Esther Cornovski entered the danger zone when she left the curb and ran towards defendant's track, there was no error.

However, that contention is not right. The instruction assailed did not assume the curb was the danger-line and the entire street the danger zone. It says nothing about "curb" but refers the jury generally to the child's "crossing said street and in a position of danger of being struck by said car." That is, wherever the danger-line lay the jury should locate it and consider it. Hence, it is not open to the criticism leveled at it. The point is ruled against defendant.

II. It is urged that vice lurks in instruction one because it did not directly put it to the jury to find that the negligence of defendant was the "proximate cause" of the injury to plaintiffs' child. It is true the instruction does not use the phrase "proximate cause." That phrase is one of a large and learned terminology, and it involves a refinement in mental processes and reasoning not of the essence of a good instruction, provided the thing to be got at is put to the jury in another way and within easy, everyday comprehension. The phrase "proximate cause" is not an everyday or hearthstone phrase. The average men who compose the body of the county, from which jurors are drawn,

daily and shrewdly reason well from cause to effect, and doubtless not one in a thousand of them in so reasoning use that formidable and bookish phrase. They use other expressions from their mother-tongue meaning the same thing.

It is elementary that there must be a causal connection between the negligence and the injury in order for the negligence to be actionable. [Harper v. Terminal Co., 187 Mo. 575.] Here the jury were told that if they found from the evidence the motorman saw or by keeping a vigilant watch would have seen Esther crossing said street and in a position of danger of being struck by said car, and by stopping said car within the shortest time and space practicable, under the circumstances, with the means and appliances at hand, by the exercise of ordinary care consistent with the safety of said car and of the persons on said car, could have avoided running over and killing said child, and neglected to do so, then plaintiffs are entitled to recover, unless they found plaintiffs were guilty of negligence in the care and custody of the child directly contributing to cause its death.

Now, the case at bar is one in which it is not contended the deceased child was of age to be guilty of contributory negligence. [Holmes v. Railroad, 190 Mo. l. c. 106.] That, then, is out of the case.

Nor is it one in which there is an iota of testimony that any other cause produced death except the act of the motorman in running his car over the child. With so much assumed, the issue to be tried is separable into three elements: *First,* the contributory negligence of the parents. That was put to the jury fairly by instruction one, and by other instructions for defendant. *Second,* the negligence of defendant. There was ample evidence to show that, and the question was submitted properly. *Third,* the causal connection between the negligence and the death. As to this element, the jury

were told, in substance, that if defendant's motorman could have avoided killing the child by the use of ordinary care, after it was seen or might have been seen in peril, and neglected to exercise such care, then defendant is liable. It might have been better to have inserted in the instruction some such clause as this: "And if the jury further find that such failure, if any, to exercise ordinary care directly caused the injury and death of Esther," or "was the proximate cause of her injury and death, then the jury should find, *etc.*" But though no such phrase, *totidem verbis,* is used, yet in fair logical intendment the instruction must be held sufficient to put to the jury the causal connection between the negligence of defendant and the death of the child—*i. e.,* that one was caused by the other. Thus, if A kill B and it is once determined that he could have avoided killing B by the exercise of due care, it would seem that, in the domain of reason and in ultimate analysis, the connection is made between the killing and the failure to exercise due care, that the two things bore the relation of cause and effect. An instruction in similar form has been sustained by the reasoning of this court. For example: Rapp v. Railroad, 190 Mo. l. c. 154, *et seq.;* Hilz v. Railroad, 101 Mo. l. c. 40, *et seq.*

In the 'latter case (p. 54) it was held that where the failure to discover decedent was the result of the omission of the measure of duty required by the law, and where a due observance of the duty would have avoided the injury by the use of reasonable care, then such omission and want of reasonable care is under the law held the proximate cause of the injury.

But we need not allow the foregoing reasons to be alone determinative of the point. In this case the doctrine of aider may be invoked, for if it be admitted there be doubt as to whether plaintiffs' instruction squarely put the causal connection to the jury, or if that causal connection was put feebly or obscurely or

only impliedly to them, yet defendant's own instructions turned on full light, cleared up all obscurity and removed all doubt, if any existed on that question. By defendant's instruction number four the jury were told that before they found for plaintiffs they must find that the injuries and death of Esther were actually caused by defendant in the manner submitted to them by the instructions; and that if her death was not actually caused by such specified negligence, then plaintiffs have no case, even if Esther was killed by being run over by defendant's car. By instruction 5 they were told that they could not infer negligence from the fact that the child was injured by the car. By instruction 6 they were told that though the burden was upon defendant to establish the contributory negligence of plaintiffs, yet that did not relieve plaintiffs of the burden of proving that the injury and death of Esther were solely caused by the negligence of defendant. The same point was under exposition in Deschner v. Railroad, 200 Mo. l. c. 332, et seq., and was ruled as herein indicated. The instructions must be read as one body of law and the assignment of error is, therefore, disallowed.

III. It is next argued that plaintiffs' instruction number three was erroneous in form and unsupported by the testimony. That instruction follows approved precedents. [Czezewzka v. Railroad, 121 Mo. 201; Levin v. Railroad, 140 Mo. 624.] It is of the essence of good sense that if an appellate court has got on the wrong track it should get on the right track—the sooner, the better. Nevertheless, it is no light thing for a court to have persuaded litigants into the belief that a certain instruction announces a correct rule of law and is applicable to a given state of facts, then, when that belief has crystalized into action in a concrete case, to face the other way and destroy a judgment the product of its own teaching.

Much might be said and well said against the use

of the phrase "circumstances in life" in measuring the duty of a parent to a child where the question hinges on the parents' contributory negligence; and appellant's counsel have not been amiss or remiss in saying it. At first blush, the use of that phrase seems to involve a question of poverty or riches, of high or low social status, and to invite (or squint at the invitation of) proof of the fact, in one case, that the parents are poor and needy, downcast and humble, and in another case that they are opulent and exalted, lolling in the lap of wealth and seated in a high place. Such a field of exploration in a jury trial in a negligence case is full of pitfalls and snares, insidiously appeals to class prejudice, and runs counter to the broad proposition that there is but one rule of law for the high and the low, for the rich and the poor. Doubtless the courts would shut the door on such proofs, if offered.

Nevertheless, it may be said that those who of necessity are preoccupied with the toil of their own hands to earn their daily bread might not in a given case be guilty of negligence in allowing a little child to escape to the street of a city, when other persons because of other circumstances and conditions might be found by a jury to be remiss in a given case—due care being a care that adjusts itself automatically to the circumstances of the case. [Dean v. Railroad, 199 Mo. l. c. 408.]

Contributory negligence is but negligence with an expletive. Negligence is but the absence of due care. Due care is ordinary care. Ordinary care is defined as the care that would be exercised by a reasonably prudent person under the same or similar circumstances. That definition is a landmark of the law. "The old way is the safe way," says Chancellor KENT in Manning v. The Executors of Manning, 1 Johns. Chan. *530. "The beaten way is the safest," says Lord Coke. [10 Coke,

142.]   That definition may well be taken as both the old way and the beaten way.   To try to improve on it is but to add "wasteful and ridiculous excess;" is but "to gild refined gold, to paint the lily."   [King John, Act. IV, sc. 1.]   If a close case were here we would be disinclined to follow the Czezewzka and the Levin cases.   If such case were here involving a consideration of the phrase "circumstances in life," we would deem it our duty to consider the question of its use open and serious; but in the case at bar its use must be held harmless error, if error at all.   Here there was no proof of plaintiffs' social or financial condition in life, as such.   The evidence pictured to the jury the business and surroundings of plaintiffs and their home.   In the evidence the jury were told the facts upon which to base their verdict on the issue of contributory negligence.   The employment and duties of the father and mother at the immediate time the child escaped to the street were before the jury.   The evidence went no further than this, and we think was entitled to go as far as it did; and it would be audacious to say that the phrase "circumstances in life" produced any effect on their verdict.

There being no error affecting the merits, the judgment is affirmed.

*Valliant, P. J.*, and *Woodson, J.*, concur in the result and in all of the opinion except the criticism of the Levin Case and the Czezewzka Case; *Graves, J.*, concurs in the result and in all of the opinion except paragraph three.   He holds that the instruction discussed in that paragraph is bad, but under the facts of the case harmless.