Fay C. COIT, Respondent,

v.

G. J. BENTZ, Appellant.

No. 48047.

Supreme Court of Missouri,

Division No. 2.

July 10, 1961.

Motion for Rehearing or for Transfer
to Court en Banc Denied
Sept. 11, 1961.

A. Warren Francis, Lloyd A. Hamrick, Kansas City, for appellant.

Garrett, Weed & Jones, Kansas City, for respondent.

EAGER, Judge.

This appeal is from an order of the trial court granting plaintiff a new trial on account of error in an instruction, after the jury had found for the defendant. Since plaintiff's prayer was for $17,500, we have jurisdiction. The case arises out of an automobile collision in Kansas City. The only points made involve instructions, and we may state the facts briefly.

Plaintiff testified: that he was driving west on Admiral Boulevard, approaching Troost Avenue, in the middle of three west-bound lanes; there was a stop light at the intersection and this could be operated manually by a push button; he saw children at the corner, and the light turned amber when he was three or four car lengths back; he had slowed to 12–15 miles per hour, and stopped about 2–3 feet from the crosswalk. As he stopped with his foot on the brake, he took the car out of gear and had gotten a cigarette out of his pocket when there was a violent crash at the back of his car. He further testified: that his car was knocked 5–6 feet over the white line; that he got out, recognized the defendant, and they pulled around the corner and talked; plaintiff's left bumper guard was knocked off and the "gravel guard" bent; defendant's car had some broken grille work; plaintiff felt no personal injuries at that time; he had previously seen, in the mirror, a car behind him; he estimated that he had been stopped 2–5 seconds before the impact. He emphasized on cross-examination that he stopped in the center lane, and had been in it since he entered Admiral from the south at Paseo. He testified that the north lane was used for parking at times, but not during the rush hours, as this was; he had, however, just passed a car which had stopped in the curb lane for some purpose; he admitted that in his deposition he had testified that he was in the "north lane," but he sought to explain that he meant the more northerly of the two lanes not used for parking; he also said that his car was 8–9 feet from the curb at the time of the impact. He began to note painful injuries the next morning, but these are immaterial here.

Defendant's version was: that he was driving alone, as was plaintiff; he was in the center lane of the westbound lanes and he had noted a car ahead of him (which proved to be plaintiff's), but this was in the lane to his right; he had slowed to a "stopping speed" as the light at Troost turned to amber, when suddenly and without warning this car in front "swerved to the left just a little bit * * *," and came 3–4 feet into defendant's lane; he applied his brakes, but his bumper hit the left side of plaintiff's bumper just as he stopped; the cars did not move at the impact; he asked plaintiff why he turned over, and the latter replied that "I didn't want to hit them people." He further testified: that he was 1–3 car lengths behind plaintiff when the latter swerved; that plaintiff's bumper guard "flipped" into his grille.

The instruction held erroneous was defendant's No. 5; however, in order to understand it adequately, we must quote plaintiff's Instruction No. 1, as follows: "The Court instructs the Jury that if you find and believe from the evidence that on the 5th day of November, 1957, plaintiff, Fay C. Coit, was operating an automobile, mentioned in evidence, in a westerly direction on Admiral Boulevard in Kansas City, Missouri, in the second lane for westbound traffic, north of the center line of said Admiral Boulevard, and was approaching the intersection of said Admiral Boulevard with Troost Avenue, if so, and if you

further find and believe from the evidence that defendant was operating an automobile mentioned in evidence in the same direction of plaintiff's automobile on said Admiral Boulevard, if so, and if you further find and believe from the evidence that plaintiff was required to and did bring his automobile to a stop at the intersection of said Admiral Boulevard and Troost Avenue for a red light for westbound traffic on said Admiral Boulevard, if so, and if you further find and believe from the evidence that when plaintiff's automobile was so stopped at said intersection, if you so find, the defendant caused, suffered and permitted the front end of his said automobile to come into contact with the rear end of the automobile with plaintiff therein, and if you further find and believe from the evidence that defendant did not exercise the highest degree of care in keeping a lookout ahead to observe plaintiff's automobile and its movements, and in keeping the car operated by defendant under control so as to avoid a collision, and if you further find that such conduct on the defendant's part, if any, was negligence, and if you further find and believe from the evidence that plaintiff was at all times exercising the highest degree of care, and if you further find and believe from the evidence that as a direct and proximate result of the contact between said automobiles, if any, plaintiff was injured, then you will find the issues in favor of plaintiff and against the defendant."

Defendant's Instruction No. 5 was as follows: "The Court instructs the jury that if you find and believe from the evidence that at the time and place mentioned in evidence defendant was keeping a lookout ahead for other automobiles, including plaintiff's automobile, if so, and if you further find that defendant did have his automobile under control, if so, then you are instructed your verdict should be against plaintiff and in favor of defendant."

After the first submission of this appeal the court, of its own motion, ordered a rehearing. The case has been rebriefed and reargued; it will not be necesary to consider all the points now briefed. The principal controversies raised in the briefs are whether or not plaintiff submitted the "rear-end collision" doctrine in his Instruction No. 1, whether it was necessary for defendant to converse any such supposed submission in his Instruction No. 5, and, of course, whether Instruction No. 5 was otherwise correct as a converse. Certain other matters will be referred to in the opinion.

It is doubtful, to say the least, whether plaintiff pleaded the rear-end doctrine as a theory of negligence, but defendant concedes that such might properly have been submitted under the evidence, whether pleaded or not. And see, § 509.500 RSMo 1959 and V.A.M.S.; Civil Rule 55.54 V.A. M.R.; Gooch v. Lake, Mo., 327 S.W.2d 132, 134. We first consider whether Instruction No. 1 submitted that theory of negligence, as plaintiff insists it did. When Instruction No. 1 is analyzed, it is seen that the only acts of defendant hypothesized as negligence are: "And if you further find and believe from the evidence that defendant did not exercise the highest degree of care in keeping a lookout ahead to observe plaintiff's automobile and its movements, and in keeping the car operated by defendant under control so as to avoid a collision, * * *." The words,—"and if you further find that such conduct on the defendant's part, if any, was negligence," clearly refer only to the two acts just previously hypothesized as constituting a failure to exercise the highest degree of care. The preceding part of the instruction, which plaintiff now asserts was a submission of negligence based on the rear-end doctrine, namely, " * * * and if you further find and believe from the evidence that plaintiff was required to and did bring his automobile to a stop at the intersection of said Admiral Boulevard and Troost Avenue for a red light for westbound traffic on said Admiral Boulevard, if so, and if you further find and believe from the evidence that when plaintiff's automobile was so stopped at said intersection, if you so find, the defendant caused, suffered and permitted the front end of his automobile

to come into contact with the rear end of the automobile with plaintiff therein, * * " is a mere statement of the evidentiary facts of the collision, preliminary to the specifications of negligence; this is immediately followed, as already noted, by the words: " * * * and if you further find and believe from the evidence that defendant did not exercise the highest degree of care in * * * " (lookout and control). The claim here of a submission of the rear-end doctrine would seem to be an afterthought; had plaintiff actually intended to submit it as such, he should certainly have required a finding that defendant, in causing and permitting his car to strike the rear end of plaintiff's car, failed to exercise the highest degree of care and was negligent. As indicating such a manner of submission, see: McVey v. St. Louis Public Service Co., Mo., 336 S.W.2d 524 (where the requirement of negligence is emphasized); Jones v. Central States Oil Co., 350 Mo. 91, 164 S.W.2d 914; Hughes v. St. Louis Public Service Co., Mo.App., 251 S.W.2d 360; Gooch v. Lake, Mo., 327 S.W.2d 132; Witherspoon v. Guttierez, Mo., 327 S.W.2d 874; State ex rel. Spears v. McCullen, Banc, 357 Mo. 686, 210 S.W.2d 68; Doggendorf v. St. Louis Public Service Co., Mo.App., 333 S.W.2d 302. Plaintiff should also have hypothesized enough of the circumstances and environment to show that his car was in a place where it had a right to be *at the time of the collision* (as, for instance, that it stopped in the same lane in which it had been traveling), that it was being properly operated, and that defendant, following him, drove his car into plaintiff's car in that place and position. Jones, supra; Chiodini v. Terminal R. Ass'n of St. Louis, Mo.App., 287 S.W.2d 357; Doggendorf v. St. Louis Public Service Co., Mo.App., 333 S.W.2d 302. That requirement has special application to a case where, as here, the evidence of the position and movements of plaintiff's car are in sharp dispute. We do not find it necessary here to rule specifically on the time element, as suggested in Doggendorf, for we have held that the very wording of this instruction does not

constitute a submission of the rear-end doctrine. In a case where the forward vehicle is stopped, that may well be a material element. Plaintiff's instruction here could not properly have constituted a submission under the res ipsa loquitur doctrine, as considered in Boresow v. Manzella, Mo., 330 S.W.2d 827, for plaintiff submitted specific negligence. And we note here that the following cases have held that the rear-end submission constitutes specific, and not general, negligence. Jones v. Central States Oil Co., supra; Gooch v. Lake, supra; State ex rel. Spears v. McCullen, supra; Chiodini v. Terminal R. Ass'n of St. Louis, supra; McVey v. St. Louis Public Service Co., supra; Hughes v. St. Louis Public Service Co., supra; and also the concurring opinion of two Judges in Boresow, supra, with no effective decision on this particular point.

■ We do not find Instruction No. 5 bad for a failure to converse any claimed submission of the rear-end doctrine. And in this we do not mean to depreciate those cases holding that, in conversing a conjunctive submission of different specifications of negligence, the defendant may submit either an exact converse of the instruction, or the exact converse of any essential element, or that he may hypothesize facts which, if true, would disprove one or more essential factual elements of plaintiff's case. Liebow v. Jones Store Co., Mo., 303 S.W.2d 660; Dell'Aria v. Bonfa, Mo., 307 S.W.2d 479; Oshins v. St. Louis Public Service Co., Mo., 254 S.W.2d 630; Alberty v. Sunshine Biscuit Co., Mo., 321 S.W.2d 418. Of course, a converse may not ignore the one real issue. See, for instance, Johnson v. St. Louis Public Service Co., Mo., 255 S.W.2d 815, where negligence in failing to stop was ignored, although such was an integral part of the submission under the "Vigilant Watch" ordinance. The option permitted to the defendant is applicable when plaintiff, who has the affirmative and picks the field of battle, chooses to join in the conjunctive different assignments of negligence which he claims jointly caused the injury.

The submission of negligence in failing to have one's car "under control" has been rather vigorously criticized, and recently. Myers v. Buchanan, Mo., 333 S.W. 2d 18; Annin v. Jackson, 340 Mo. 331, 100 S.W.2d 872; Johnson v. Flex-O-Lite Mfg. Corp., Mo., 314 S.W.2d 75; Kitchen v. Wilson, Mo., 335 S.W.2d 38. And the submission has been characterized as merely one of general negligence. Thompson v. Gipson, Mo., 277 S.W.2d 527. We need not, and shall not, reach the argument that the converse of the failure to control was likewise a converse of all the essential elements of the rear-end doctrine. However, we may not penalize defendant here for attempting to converse the lack of control, for if the submission of an issue of control was error the initial error was plaintiff's and he invited any such mischance on defendant's part.

We do find, however, that Instruction No. 5 was erroneous, entirely independent of any question of the submission of the rear-end doctrine. Plaintiff submitted the hypothesis that defendant *"did not exercise the highest degree of care* in keeping a lookout ahead to observe plaintiff's automobile and its movements, and in keeping the car operated by defendant under control so as to avoid a collision, *and * * * that such conduct * * * was negligence, * * *."* (Italics ours.) In attempting to converse that submission, defendant merely hypothesized that "defendant was keeping a lookout ahead for other automobiles, including plaintiff's automobile, if so, and * * * that defendant did have his automobile under control, * * *." He made no real attempt to follow the wording of the instruction; he insists here, however, that he thus submitted an exact converse. Instruction No. 5 required no finding that defendant was not negligent (as otherwise defined) in the respects charged, or that he was acting in the exercise of the highest degree of care with respect to either lookout or control. So far as this instruction was concerned, the jury might be the sole judge of the type of lookout necessary or the extent of control. The importance of this, at least so far as concerns lookout, is emphasized when we stop to note that defendant is legally bound to see what he should have seen in the exercise of the highest degree of care. Lilly v. Boswell, 362 Mo. 444, 242 S.W.2d 73, 76. Defendant insists now that the requirement of the highest degree of care appearing in plaintiff's Instruction No. 1 and references to "negligence" appearing elsewhere must be read into this instruction, that the jury could not have been misled, and that to have defined and delineated the extent of defendant's duty in Instruction No. 5 would have been repetitious. Of course, all instructions must be read together. Johnson v. Flex-O-Lite Mfg. Corp., Mo., 314 S.W.2d 75, 81. Instruction No. 5 did not even refer to other instructions, expressly or by any reasonable implication; it directed a verdict, and because of the omission of a necessary element it was a misstatement of the law, and created a conflict with Instruction No. 1. See also, by analogy, Burlingame v. Landis, 362 Mo. 523, 242 S.W.2d 578, 581; there the term "in a careful and prudent manner" was held to be in conflict with an instruction requiring the highest degree of care. There was a sharp conflict in the evidence in the present case, and the precise extent of defendant's lookout was highly material, as was also his "control," if indeed the latter is worth anything legally. In the cases cited by defendant where there was no reference to "negligence" in converse instructions it will be found that the converses were not of complete assignments of negligence, as such, but of physical acts constituting vital and necessary elements of plaintiffs' assignments,—as that defendant did not cross the center line of the road, Frechin v. Thornton, Mo., 326 S. W.2d 122, 127; or that plaintiff fell in stepping from a bus after it had stopped, Rose v. St. Louis Public Service Co., Mo., 205 S.W.2d 559, 561.

In concluding that Instruction No. 5 was erroneous for the reasons last stated,

we have in mind the rule that where a new trial has been granted we view the error assigned by the court with a "broad and liberal construction." Bierman v. Langston, Mo., 304 S.W.2d 865, 868. This rule of liberality applies even when a new trial is granted for error in an instruction. Shaffer v. Sunray Mid-Continent Oil Co., Mo., 336 S.W.2d 102. This does not mean, of course, that the trial court's construction can make a bad instruction good, or a good instruction bad, but its view is material as to the prejudicial effect on the jury of a misleading instruction or of one which constitutes a misstatement. Thompson v. St. Joseph Ry., Light, Heat & Power Co., 345 Mo. 31, 131 S.W.2d 574, 582. Under all the circumstances here, we hold that the trial court correctly granted a new trial for error in Instruction No. 5.

The order granting a new trial is therefore affirmed.

LEEDY, P. J., concurs in result.

STORCKMAN, J., concurs in separate opinion.

STORCKMAN, Judge (concurring).

In concurring I wish to point out additional authority criticizing "lack of control" as a proper assignment of specific negligence in the operation of an automobile. May v. Bradford, Mo., 348 S.W.2d 133, calls it an "abstract submission" and cites Rosenfeld v. Peters, Mo., 327 S.W.2d 264, 269[7, 8], wherein it is said such a submission "at least was confusing and could be construed as a roving commission." It has been termed a submission of general negligence which gives the widest kind of roving commission. Highfill v. Brown, Mo., 340 S.W.2d 656, 663 [9]; McCarthy v. Sebben, Mo., 331 S.W.2d 601, 606. See also Kimmich v. Berry, Mo., 319 S.W.2d 546, 547–548; Vogelgesang v. Waelder, Mo. App., 238 S.W.2d 849, 856[8]; and State ex rel. Burger v. Trimble, 331 Mo. 748, 55 S.W.2d 422, 423[2].

The Bar should be acquainted with the hazard which the continued use of this submission presents.