Howard T. CLUCK, Plaintiff-Respondent,

v.

Edward SNODGRASS, Defendant,

and

Ruth E. Wiley, Defendant-Appellant.

No. 8277.

Springfield Court of Appeals.

Missouri.

Aug. 20, 1964.

F. William Joyner, William P. Sanford, Miller, Fairman, Sanford, Carr & Lowther, Springfield, for defendant-appellant.

William A. R. Dalton, B. H. Clampett, Daniel, Clampett, Ellis, Rittershouse & Dalton, Springfield, for plaintiff-respondent.

HOGAN, Judge.

This is an action for damages for personal injuries sustained in a vehicular collision. The jury has returned a verdict for the plaintiff and against both defendants in the amount of $3,250.00. After an unavailing motion for new trial, defendant Ruth E. Wiley has appealed.

The accident in question occurred about 1:00 P.M. on September 27, 1961, on U.S. Highway No. 65, near Highlandville, Mis-

souri. The highway, at the place in question, is a "winding" bituminous or blacktop road. Generally speaking, it runs north and south, and is so treated by the parties. At the time, a light rain was falling and the pavement was wet. As the appellant is at some pains to point out, the accident involved three vehicles and two collisions. The accident happened on a curve which bears to the left (east) as one is traveling south; defendant Wiley was going south, followed by the plaintiff, and defendant Snodgrass was traveling north. The Snodgrass vehicle collided with Mrs. Wiley's automobile on the curve and then struck the plaintiff's truck. Though the force of the evidence is vigorously disputed, it was the plaintiff's theory that because both Mrs. Wiley and Mr. Snodgrass were driving too near the center of the road, the Snodgrass vehicle sideswiped Mrs. Wiley and caromed or rebounded into the plaintiff's truck.

Plaintiff, a 52-year-old laundry sales driver, testified that on the occasion in question he was working in his "south territory," which took him to several points south of Springfield, Missouri. He was driving south—toward Highlandville—following Mrs. Wiley, who had passed him a short distance north of the place of the accident. Mr. Cluck, who was traveling alone, was driving what he described as an International "metro-body step-van" truck, which we take as a vehicle specially adapted for pickup and delivery service. Both Mrs. Wiley and plaintiff were traveling at a fairly constant speed of about 35 to 40 miles an hour, and Mr. Cluck estimated he was following Mrs. Wiley at a distance of 125 to 175 feet. Mr. Cluck testified that the Wiley vehicle was visible to him at all times.

The curve or bend in which the casualty occurred was described by plaintiff as being a "winding curve * * * a left turn when you are headed south." When Mrs. Wiley "went into the curve, she was on her side," but as she "got out into the bend of it, she had pulled across the yellow line." As the plaintiff related the matter, "when she [Mrs. Wiley] got into the deep part of the curve, here come a car over the hill [Snodgrass]" "riding the center line, and I thought they were going to hit head-on. * * *" Plaintiff then applied his brakes and turned right onto the shoulder; but defendant Snodgrass' vehicle "glanced off" Mrs. Wiley's car and "headed right at" him. Mr. Cluck then attempted to turn further to the right, but the Snodgrass vehicle struck plaintiff's truck, throwing the plaintiff first against a metal towel rack inside his truck, and down into the step-well beside the front door. Mr. Cluck estimated that he was "up to within about 75 feet of" Mrs. Wiley when the Snodgrass vehicle collided with her.

Mrs. Wiley's testimony in some respects corroborates, or at least is not substantially different from, the plaintiff's. Mrs. Wiley was returning to Branson, some distance south of Highlandville. She was accompanied by her husband. Driving at a speed of about 35 to 40 miles an hour, she proceeded into the curve and observed the Snodgrass car, some 100 feet to the south, "straddling the double yellow line," with "the left side of his car * * * well over the double yellow line." Mrs. Wiley was, in her words, "in the center of the right lane." She then "instinctively pulled to the right," but though she turned aside and managed to get her right wheels off the pavement onto the right shoulder, the Snodgrass vehicle struck her. Mrs. Wiley testified that she did not see the second impact or collision. Mrs. Wiley's husband, who was riding with her, corroborated her testimony to the effect that the Wiley vehicle was at all times in its proper lane; Mr. Wiley's testimony was that his wife was "in the middle of her half of the road."

Defendant Snodgrass, who had defaulted, and against whom a default judgment was taken, testified in response to plaintiff's subpoena. His recollection of the surrounding circumstances of the accident was generally the same as that of the plaintiff and defendant Wiley, except that he testified that Mrs.

Wiley's car was "just on the center line" when he first saw it and that he was in his proper lane (going north) when he first saw Mrs. Wiley's car. At that time, the Wiley vehicle was 45 to 50 feet away and Mr. Snodgrass stated that the "front end and back end" of his car collided with Mrs. Wiley's; he then "scooted on across and bumped into this truck." Mr. Snodgrass minimized the impact with the Cluck vehicle, stating that his speed was probably 10 miles per hour after the first collision and that he "just barely hit him [plaintiff] at the door." After the second collision, Mr. Snodgrass came to a stop on the road within 15 feet.

The plaintiff appears to have sustained no permanent injury, at least according to the medical testimony. However, for a time after the accident, he was unable to perform all the duties required of him without assistance, and for several months after the accident he appears to have suffered pain and soreness in his neck. The record reflects that he had, at trial time, been examined by two admittedly well-qualified physicians, both of whom characterized his injury as a mild to moderate cervical or neck strain, with accompanying pain and inflammation spasm.

Appellant Wiley's first point, which she has argued at length in her brief and before this court, is that the plaintiff failed to establish a direct and proximate causal relationship between her negligence, if any, and the collision of the Snodgrass and Cluck vehicles. Pointing to the fact that the evidence does not show precisely the movements of the Snodgrass vehicle after the first collision, nor the effect of the impact upon Snodgrass or his vehicle, she argues that there is no evidence to show a positive connection between the two collisions.

■ Granting that the subject of proximate cause is a matter of some complexity, we consider the appellant's argument in this respect to be somewhat overstated. Taken most favorably to the plaintiff, the evidence indicates that he was following Mrs. Wiley

south on Highway 65 at a moderate rate of speed as she entered a curve bearing to the left. Snodgrass was approaching from the opposite direction. From the plaintiff's testimony, the jury could have found that as Mrs. Wiley "got into the bend" of the curve, she "had pulled across the yellow [median] line," and that Snodgrass, as he approached from the opposite direction, was "riding the yellow line," so that it appeared the two vehicles would collide head on. Snodgrass' testimony was that he was on the "right hand side" but that Mrs. Wiley was "just on the yellow line." Mrs. Wiley testified that she was in her own lane but that Snodgrass was "straddling the double yellow line" with the left side of his car "well over" the double yellow line. It is not disputed that the Snodgrass and Wiley vehicles did collide, nor, as we understand the record, is there any indication that the collision was caused by something other than the conduct of one or the other, or both, of the defendants in operating their respective automobiles. We are therefore of the opinion that a jury could infer that either Mr. Snodgrass or Mrs. Wiley, or both of them, were negligent in causing the first collision. Burr v. Singh, 362 Mo. 692, 698–699, 243 S.W.2d 295, 299–300.

At the time of this first collision, the plaintiff testified that he was "up to within 75 feet" of the Wiley automobile, and it is inferable from Snodgrass' testimony that plaintiff was somewhat closer, possibly within 45 to 50 feet. Plaintiff, describing the collision as a "sideswipe," said that after the first impact "the [Snodgrass] car glanced off Mrs. Wiley's car * * * and it headed right at me." Snodgrass described the matter in much the same way; he said that the "front end and back end both" [of his vehicle] struck Mrs. Wiley's car. We cannot agree with appellant's argument that this first impact was insubstantial; Snodgrass testified that when he struck Mrs. Wiley he was going 30 miles an hour, and when he struck Mr. Cluck he was going "probably 10 miles an hour," although he "didn't apply no brakes."

After the first impact, Snodgrass stated that his vehicle "scooted on across and bumped into this truck." It was his testimony that plaintiff was "coming on around the curve * * * trying to get off out of the way * * * as far as he could." Plaintiff's testimony was that he had "braked my truck and * * * had the wheels practically off the blacktop, and * * * the Chevrolet [Snodgrass' car] * * * headed right at me." The Snodgrass vehicle "stopped at the side of me [plaintiff] after he hit me." Snodgrass testified that he stopped within "about fifteen feet" after striking the plaintiff. Mrs. Wiley did not see the second collision and had momentarily "lost him [plaintiff] in my rearvision mirror," but until she started into the curve she could "see him in [the] rearvision mirror most of the time."

Without attempting to state all the inferences possible upon such a state of fact, we believe it could be inferred here that defendant Wiley's negligence was a substantial factor in producing the second collision, even though it may be true that other causes contributed to produce the second impact. As this court has pointed out, causal connection need not be established by direct and positive evidence but may be shown by proof of facts and circumstances from which such causation may reasonably be inferred. Leek v. Dillard, Mo.App., 304 S.W.2d 60, 65 [10]. Moreover, it is usually sufficient to constitute proximate cause that the negligence charged was an efficient cause which set in motion the chain of circumstances leading to the injury or damages, Floyd v. St. Louis Pub. Serv. Co., Mo., 280 S.W.2d 74, 78 [8], and defendant Wiley would be liable if her negligence combined with other causes to produce the plaintiff's injury, even though her negligence was not the sole proximate cause. Gaines v. Property Servicing Co., Mo., 276 S.W.2d 169, 173–174 [3–5]; Caldwell v. St. Louis Pub. Serv. Co., Mo., 275 S.W.2d 288, 292–293 [4, 5]. Whatever may have been the natural forces acting upon the Snodgrass vehi-

cle after the first impact, and Snodgrass' condition after the first collision—he testified he got out of his car and pushed the plaintiff's truck—we consider a jury might reasonably have found that Mrs. Wiley negligently drove to the left (east) of the center line and struck the Snodgrass vehicle, causing it to rebound into the plaintiff's truck a short distance behind her. We believe the trial court properly denied defendant's motion for a directed verdict on this ground.

The appellant next directs a number of specific complaints to plaintiff's Instruction No. 6—his verdict-directing instruction. After abstractly advising the jury that it is the duty of the operator of a motor vehicle to exercise the highest degree of care, and the duty of the operator to drive his motor vehicle upon the right half of the roadway, this instruction then continues:

"Therefore, if you find and believe from the evidence:

"First, that, on the 27th day of September, 1961, plaintiff was driving a panel delivery truck in a Southerly direction on U. S. Highway No. 65 in Christian County, Missouri, if so, behind a South-bound Oldsmobile automobile driven by defendant Ruth H. Wiley, if so;

"Next, that, at said time and place, defendant Edward Snodgrass was driving a Chevrolet automobile in a Northerly direction on Highway 65, if so;

"Next, that the automobiles operated by defendant Ruth H. Wiley and defendant Edward Snodgrass collided on a curve, if so;

"Next, that, after the automobiles operated by defendant Ruth H. Wiley and defendant Edward Snodgrass collided, defendant Snodgrass lost control of his North-bound Chevrolet, if so, and collided with plaintiff's South-bound panel delivery truck on plaintiff's right half of the highway;

"Next, that, as the automobiles operated by defendant Ruth H. Wiley and defend-

ant Edward Snodgrass met and collided, both defendant Wiley and defendant Snodgrass failed to operate their automobiles upon the right half of the highway, if so; and

"If you further find and believe from the evidence that, in failing to operate their automobiles upon the right half of Highway 65 (if so), defendant Wiley and defendant Snodgrass both failed to exercise the highest degree of care and were thereby negligent, if so; and that such negligence on their part, if any, combined and concurred to directly and proximately cause plaintiff to be injured, if so;

"Then and in that event, the Court instructs the Jury that your verdict shall be against defendant Ruth *H.* Wiley and in favor of plaintiff Howard T. Cluck."

The appellant, calling attention to the language which hypothesizes that defendant Snodgrass lost control of his northbound vehicle, argues that the plaintiff has attempted to submit a lack or loss of control as a specific act of negligence, without requiring a finding of the necessary causal relationship between the loss of control by Snodgrass and the first collision, and without hypothesizing the manner in which he lost control. Upon the authority of Miles v. Gaddy, Mo., 357 S.W.2d 897, the appellant maintains that the instruction gives the jury a roving commission and is prejudicially erroneous.

■■■ While we cannot unreservedly agree with the respondent that Instruction No. 6 is "both clearly written and logically arranged," we are of the view that the appellant places a strained construction upon the language used. It is true enough that instructions submitting only that the operator failed to control a motor vehicle have been condemned, generally because such an aggregate or collective submission of all the factual elements and circumstances does not really advise the jury what facts they are to consider in determining negligence vel non, and thus amounts to a so-called "roving commission." Miles v. Gaddy, supra, 357 S.W.2d at 900–901; McCarthy v. Sebben, Mo., 331 S.W.2d 601, 606–607; Carson v. Evans, 351 Mo. 376, 379, 173 S.W.2d 30, 31 [1]; Annin v. Jackson, 340 Mo. 331, 340–341, 100 S.W.2d 872, 876–877 [6]. Such considerations do not obtain here, however. What the plaintiff's evidence had a tendency to show, and what he undertook to submit to the jury by Instruction No. 6, was the concurrent negligence of both defendants in producing the first impact or collision, and the resulting collision between Snodgrass and the plaintiff. It is fairly inferable that Mr. Cluck was within 40 to 50 feet of the Wiley vehicle when the first collision occurred, and the evidence given by Snodgrass was that he just "scooted across" and hit the plaintiff. There is no contention that defendant Snodgrass could have done anything to avoid Mr. Cluck after colliding with Mrs. Wiley, and insofar as the plaintiff undertook to submit the antecedent negligence of both defendants in producing the collision between the Wiley and Snodgrass vehicles and the resulting collision between Snodgrass and the plaintiff, we think his approach was correct; the essential negligence to be submitted lay in the defendants' combined antecedent conduct. See Kitchen v. Wilson, Mo., 335 S.W.2d 38, 45 [8].

The plaintiff submitted this negligence by hypothesizing a violation of Section 304.015, par. 2, RSMo (1959), V.A.M.S., on the part of both defendants. The "loss of control" is hypothesized here merely as a factual element of the plaintiff's submission, not as a specification of negligence; and the evidence that the Snodgrass vehicle "glanced off" the Wiley car and "scooted across" the highway justifies, we think, a finding that the Snodgrass vehicle was momentarily out of control. So far as the plaintiff's hypothesis of facts is criticized as being too general, we believe the appellant's criticism is unjustified in the circumstances of this case. The requirement that a verdict-directing instruction contain

a specific and detailed factual hypothesis applies to those issues which are disputed, and concerning which the evidence is in conflict. Kelly v. Kansas City Pub. Serv. Co., Mo., 335 S.W.2d 159, 163 [6]; Redick v. M. B. Thomas Auto Sales, 364 Mo. 1174, 1189–1190, 273 S.W.2d 228, 236 [9]; Hooper v. Conrad, 364 Mo. 176, 188–189, 260 S.W.2d 496, 500–501 [2]; Knight v. Richey, 363 Mo. 293, 301–302, 250 S.W.2d 972, 977–978. Here, the essential controverted fact issue was not whether the defendants' two vehicles collided on a curve, nor whether the Snodgrass vehicle "glanced off" the Wiley car and into the plaintiff's truck; what was fundamentally in issue was whether or not the defendants' conduct as they met and collided was negligence. The plaintiff hypothesized and submitted the conduct of both defendants in the light of his evidence and in the language of the statute, which was sufficient without more elaborate hypothesis. May v. Bradford, Mo., 369 S.W.2d 225, 228–229 [7] [8]; Byrd v. McGinnis, Mo., 299 S.W.2d 455, 460 [5]; Cuddy v. Schenewark, Mo., 231 S.W.2d 689, 691 [3]; see Miles v. Gaddy, supra, 357 S.W.2d at 902 [5]. If defendant Wiley considered that the movements of the Snodgrass vehicle in the short interval between the first impact and the second were insufficiently hypothesized, then she should have offered a clarifying or amplifying instruction. Hooper v. Conrad, supra, 364 Mo. at 188–189, 260 S.W.2d at 500–501 [2].

■ The appellant also maintains that Instruction No. 6 does not postulate the facts in logical sequence and is confusing in its required finding that the operators negligently failed to drive their vehicles on *the* right half of the road without specifying whose "right" is indicated. Though appellant's argument on this point is somewhat diffuse, we take the substance of her assignment to be that the instruction is misleading because the hypothetical statements are not arranged in strict chronological sequence. Granted that the instruction narrates the facts through the entire transaction, and then somewhat awkwardly re-

turns the reader's attention to a point in time immediately preceding the first collision to determine if the defendants were negligent, an instruction is not to be held erroneous merely because of inept composition, if it is not in fact misleading. Tuttle v. Tomasino, Mo., 336 S.W.2d 683, 692 [9, 10]; Page v. Hamilton, Mo., 329 S.W.2d 758, 764 [8, 9]. The substantial issues for the jury's determination were the defendants' negligence, which was properly hypothesized, May v. Bradford, supra, 369 S.W.2d at 228–229 [7] [8], and causation, which was properly required to be found. Knox v. Weathers, 363 Mo. 1167, 1172, 257 S.W.2d 912, 914 [1]; cf. Danner v. Weinreich, Mo., 323 S.W.2d 746, 751–752 [3]. We are therefore of the opinion that the defendant was not prejudiced by the arrangement of the subject matter or the sentence structure of Instruction 6, nor do we believe there is any substantial basis to hold that it was confusing or misleading to the jury. Tuttle v. Tomasino, supra, 336 S.W.2d at 692 [9, 10]; Schmidt v. Windish, Mo., 304 S.W.2d 891, 895 [5–8]. The appellant's contention that the instruction confuses the sides of the highway ignores, we think, the antecedent hypothesis that the two automobiles were proceeding in opposite directions and minimizes the impracticability of locating the vehicles by compass direction while they were negotiating a curve. Doubtless the form and arrangement of Instruction No. 6 could have been improved, but we do not consider it prejudicially erroneous.

Defendant Wiley also vigorously criticizes Instruction No. 5, given at the plaintiff's instance. This instruction, which is rather abstract in nature, advised the jury that, as they understood, the action was one for bodily injury arising out of a motor vehicle collision, prosecuted by the plaintiff against both defendants. The instruction then very shortly summarized the position of the parties from their pleadings, and then advised the jury that they must first determine "under the Court's instructions" whether Mrs. Wiley was

negligent, and then determine whether her negligence combined and concurred with that of Mr. Snodgrass to produce injury; if so, they would return a verdict against both defendants, otherwise only against Mr. Snodgrass, who admitted liability.

 We must agree that there is some merit in defendant's criticism of this instruction, and there is no denying that certain of the rules of law for which the defendant contends—for example, that the jury should not be referred to the pleadings to ascertain the issues—are well established. Jones v. Rash, Mo., 306 S.W. 2d 488, 492 [5]; Adams v. City of St. Joseph, 360 Mo. 806, 811, 230 S.W.2d 862, 864 [2]; Fuller v. Baxter, Mo.App., 284 S.W.2d 66, 71 [12]. It was probably unnecessary for the respondent to give Instruction No. 5, for most of what is stated there is implicit in Instruction 4, given at defendant Wiley's request, which submitted defendant Snodgrass' negligence as the sole cause of the collision. A finding of sole cause implies a finding that the defendant was guilty of no concurring negligence, Happy v. Blanton, Mo., 303 S.W.2d 633, 637 [3–6]; Semar v. Kelly, 352 Mo. 157, 165, 176 S.W.2d 289, 293 [7–9]; Fassi v. Schuler, 349 Mo. 160, 167, 159 S.W.2d 774, 777 [8]; Dixon v. Wabash R. Co., Mo.App., 198 S.W.2d 395, 398 [4–9], and the defendant had effectively negatived the idea of concurrent negligence by hypothesizing that plaintiff's injuries and damage were not due to any negligence of defendant Wiley in any respect submitted. Happy v. Blanton, supra, 303 S.W.2d at 639 [11, 12]; Knox v. Weathers, supra, 363 Mo. at 1177, 257 S.W.2d at 918. However, the respondent was entitled to converse or counter the sole cause submission, Jones v. Illinois Terminal R. Co., Mo., 260 S.W. 2d 487, 491, cert. den. 347 U.S. 956, 74 S.Ct. 682, 98 L.Ed. 1101; 1 Raymond, Missouri Instructions, Section 156, p. 94 (Cum. Pocket Part 1963), and the real effect and substance of Instruction 5 was to converse a single element of defendant's sole cause submission by advising the jury that if defendant Wiley's negligence concurred with that of Snodgrass, then both defendants were liable. The vice of Instruction 5 is that the first two paragraphs consist merely of abstract statements. It has repeatedly been pointed out that abstract statements do not make proper instructions, Myers v. Buchanan, Mo., 333 S.W.2d 18, 21; Gaffner v. Alexander, Mo., 331 S.W.2d 622, 627 [3], but it has also been often said that the giving of instructions containing abstract statements will not be considered as reversible error unless it appears that the instruction was confusing, misleading and prejudicial in the particular case. Carnes v. Kansas City Southern Ry. Co., Mo., 328 S.W.2d 615, 620 [2]; Cason v. Kansas City Terminal Ry. Co., Mo., 123 S.W.2d 133, 139 [9]; State ex rel. State Highway Commission v. Haid, 332 Mo. 606, 610, 59 S.W. 2d 1057, 1058 [1–3]. We cannot agree that defendant Wiley was prejudiced by the giving of Instruction 5, at least in the respects complained of here. It seems to us that the references made to the pleadings here merely refer to the claims made by the various parties and seek to identify them to the jury. The jury is not referred to the pleadings to ascertain what the fact issues are, and we do not consider Instruction 5 prejudicially erroneous because of improper reference to the pleadings. Cacioppo v. Kansas City Pub. Serv. Co., Mo.App., 234 S.W.2d 799, 802 [10]; Anderson v. Dail, 224 Mo.App. 403, 405–406, 21 S.W.2d 496, 497–498 [1]. As to the appellant's argument that Instruction 5 improperly omits a finding of proximate cause, the jury is specifically referred to other instructions which require a finding of causative negligence as a prerequisite to a plaintiff's verdict, and we consider that sufficient. Brooks v. Mock, Mo., 330 S.W.2d 759, 767–768 [12]; Cornovski v. St. Louis Transit Co., 207 Mo. 263, 277–278, 106 S.W. 51, 56; Deschner v. St. Louis & M. R. Ry. Co., 200 Mo. 310, 332–333, 98 S.W. 737, 743(b). And inasmuch as the plaintiff attempted in this case to submit only the converse of one element of defendant's sole cause submission,

namely that the collision was not due to any concurrent negligence on Mrs. Wiley's part, we are of the view that a complete hypothesis of fact was unnecessary. Terrell v. Missouri-Kansas-Texas R. R. Co., Mo., 327 S.W.2d 230, 237 [8] [9]; McCarty v. Milgram Food Stores, Inc., Mo., 252 S.W.2d 343, 344–345 [2]; see Huffstutler v. Coates, Mo., 335 S.W.2d 70, 80 [10, 11]. We do not find Instruction 5 to be reversibly erroneous, upon the record presented.

The defendant finally contends that the trial court erred in not discharging the jury panel because of certain remarks made during voir dire by a prospective juror. During the course of the voir dire examination, one of the prospective jurors, an acquaintance of the plaintiff, was asked how long it had been since he had seen Mr. Cluck. The talesman thereupon answered that he saw the plaintiff fairly frequently in the course of his business but " * * * in bowling, I guess it has been around three years since we have had any connection there." The defendant thereupon moved that this venireman be excused upon the basis of his answer, because part of the plaintiff's claim for injuries was that he was no longer able to bowl as often as before, and the prospective juror's remark amounted to an improper introduction of evidence of plaintiff's disability. The trial court refused to quash the panel, but as a matter of fact this talesman did not serve because he was peremptorily challenged by the defendant. During the course of his direct examination, the plaintiff testified that he was still able to bowl, though not as often as before.

It is possibly true that highly improper or inflammatory remarks made before the panel by a prospective juror upon voir dire might be grounds for quashing the entire panel and declaring a mistrial, but normally the disqualification of an individual juror for bias or the expression of an opinion is not a sufficient ground for a challenge to the entire panel. State v. Weidlich, Mo., 269 S.W.2d 69, 71 [3–5]. The question whether the panel was affected by the improper statement of an opinion or remark made upon voir dire was a question largely directed to the discretion of the trial court, and we cannot say, in this case, that the court abused its discretion in refusing to quash the entire panel and declare a mistrial. State v. Weidlich, supra, 269 S.W.2d at 71 [3–5]; State v. Walters, Mo., 29 S.W.2d 89, 90 [1]; Gordon v. Kansas City Southern Ry. Co., 222 Mo. 516, 538, 121 S.W. 80, 86. See 50 C.J.S. Juries § 262, pp. 1022–1023.

We find no reversible error, and the judgment is affirmed.

RUARK, P. J., and STONE, J., concur.