Carroll **GUMM** and Grace **Gumm**,
Plaintiffs-Respondents,

v.

Michael Day **HERMAN**, Defendant-Appellant.

No. 8448.

Springfield Court of Appeals.

Missouri.

Feb. 22, 1966.

Tweedie Fisher, Jefferson City, for defendant-appellant.

Morgan M. Moulder, Camdenton, for plaintiffs-respondents.

STONE, Presiding Judge.

In this jury-tried action for the alleged wrongful death of their unmarried daughter, Lorna Lee Gumm, then 16 years of age, when struck by a 1959 Oldsmobile sedan driven by defendant Michael Day Herman, plaintiffs Carroll Gumm and Grace Gumm obtained a judgment for $10,000 against Herman. He appeals.

The accident happened about 4:30 P.M. on Sunday, July 5, 1964, a clear, dry day, on Missouri State Highway No. 7 about 3.4 miles south of Montreal in Camden County, Missouri. At and near the point of accident, Highway 7 has a two-lane blacktop roadway approximately 21 feet in width and, as one of plaintiffs' witnesses aptly described it, "is just made up of curves and dips." The tragedy under discussion occurred at the bottom of a hollow between two hills.

Kenneth Jeffries, 20 years of age, had been northbound on Highway 7 in his 1958 Chevrolet convertible with the top down and with four girls as passengers, namely, Lorna Lee Gumm who was riding in the front seat with him, and Joyce Webster, 15 years of age, her invalid sister Judy Webster, and Linda Hanks, who were riding in the back seat. Earlier in the afternoon, Jeffries and his passengers had driven to Richland and thereafter all of them, except Judy Webster, had gone swimming in Seller's Creek. As Jeffries

was proceeding north on Highway 7, he met a southbound 1957 Chevrolet convertible with the top down which was being driven by Robert Webster, 18 years of age, a brother of Joyce and Judy Webster, who (as Joyce said) "was coming to get us." So, Jeffries and Webster brought their vehicles to a stop "about straight across from" or "even" with each other. Plaintiffs' evidence was that Jeffries parked his northbound automobile "about half off on the [east] shoulder to the right and half of it on the [blacktop] highway" and that Webster stopped his southbound automobile entirely on the blacktop with its right wheels "possibly six or seven inches" from the west edge thereof. By measurement at the scene of accident on the Sunday before trial, Jeffries concluded that the distance between the two automobiles, as they had stopped opposite each other on the date of accident, had been 11 feet. Upon trial, Webster's estimate of that intervening distance between the automobiles was "approximately 10 or 11 foot." "A few seconds" after the automobiles had stopped, Joyce Webster "went over the [right] side" of the Jeffries automobile and "went around the front" of it to the left door, for the purpose of assisting her invalid sister, Judy, in transferring from the Jeffries automobile to the Webster automobile. And, although all occupants of the two automobiles who appeared as witnesses professed complete ignorance as to when or how Lorna Lee Gumm alighted from the front seat of the Jeffries automobile and reached the point where she was struck, the fact of the tragedy itself leaves no room for doubt but that she did alight therefrom and did move across the blacktop roadway to the west shoulder.

With the stage thus set for disaster, it was not long in striking. After the two automobiles had been standing for "about 25 or 30 seconds," the southbound 1959 Oldsmobile sedan driven by defendant Herman came over the crest of the hill to the north. Herman, then 23 years of age, in military service and stationed at Fort

Leonard Wood, was returning from a weekend visit at the home of his parents near Boone, Iowa. Two young men also stationed at Fort Leonard Wood, who lived in Iowa and had made the weekend trip with Herman, were riding as passengers in the Oldsmobile.

Plaintiff's witnesses testified to the following state of facts. The sight distance from the Jeffries and Webster automobiles to the crest of the relatively steep hill north of those standing vehicles was estimated by the investigating trooper at 375 to 400 feet and by other witnesses at 400 to 425 feet. As defendant's southbound Oldsmobile came over the crest of the hill, it was traveling "about" 90 to 95 miles per hour. At that time, Joyce Webster, the 15-year old passenger who had alighted from the Jeffries automobile, was standing either between the two automobiles and "right up against" the driver's or left door of the Jeffries convertible (as both Jeffries and Robert Webster testified) or behind that vehicle at a point to which she had run when she had heard defendant's approaching southbound Oldsmobile (as she testified).

Almost immediately after the southbound Oldsmobile came into view, defendant applied the brakes, the tires commenced to "squeal" and "scream" on the blacktop, and the rear end of the automobile began to skid or slide "back and forth" or (to borrow the graphic nomenclature of plaintiffs' counsel) it "fishtailed." About halfway down the hill (as evidenced by the skidmarks) the rear end of the Oldsmobile swung onto defendant's right-hand (i. e., the west) shoulder of the highway and continued moving in a counter-clockwise direction so that, as the entire automobile skidded downgrade, "the back wheels got farther away from the front wheels" and closer to the sharp embankment at the west edge of the shoulder. By the time the Oldsmobile reached the rear end of the Webster convertible which, in the meantime, had begun to move forward (toward the south) slowly but had traveled no more than one car length, the Oldsmobile was "approximately crosswise." The left

inside headlight on the Oldsmobile struck the right rear fender of the Webster automobile and, about the same time, the right front door of the Oldsmobile (skidding sidewise) struck Lorna Lee Gumm, then standing on the west shoulder near the right rear portion of the Webster automobile, and the rear end of the Oldsmobile dropped off the edge of the west shoulder. Carrying Lorna with it, the Oldsmobile went down the west embankment and came to a stop some 90 feet from the point of impact, headed back toward the north or northeast. Lorna was dead by the time an ambulance and physician arrived.

The shoulders of the highway at the point of accident were covered with vegetation. Robert Webster, the only witness on this point, estimated the width of each shoulder at nine feet. On cross-examination, Webster quickly admitted that he knew that he should not have parked on the traveled roadway, and Jeffries grudgingly "guessed" that he knew the same thing. Plaintiffs originally sued Webster and Jeffries as well as Herman, but on December 8, 1964, the day before the case went to trial, they dismissed without prejudice as to the first two. This, for the reason (so plaintiffs' counsel emphatically told the jury in his final argument) that, when the depositions of those defendants had been taken, "it was revealed * * * that they had 11 feet remaining between their automobiles, that there was a distance for almost two automobiles to pass between them."

Defendant Herman testified that, as he crested the hill, he was driving 58 to 60 miles per hour; that he immediately "saw two cars blocking the road and some people standing around them"; that, although he could not definitely "place" any of those persons except one "standing on the road between the two cars," nobody was, *at that time,* on his right-hand (i. e., the west) shoulder; that, since he could not have driven his Oldsmobile between the two automobiles blocking the road, he "put on the brakes and tried to get off on the [west] shoulder of the road hoping that I could go

around on the right on the shoulder"—"trying to avoid everything in front of me"; and that "I had already applied the brakes and had tried to get my car over on the shoulder before I ever saw this girl [Lorna] run out in front of me." After the brakes had been applied, he "felt the car start to slide" and, when the rear end went onto the shoulder, the Oldsmobile "was half turned broadside" and went out of control. As to his automobile having skidded on the blacktop, Herman suggested that "it was a warm day and new blacktop \* \* \* sweats and it \* \* \* could very easily have been somewhat slick from the oil or from the bits of oil on it."

No question is raised as to the submissibility of plaintiffs' cause of action but we have included considerable evidentiary detail to show the factual backdrop against which the case was given to the jury. On this appeal, defendant's primary thrust is against instruction 2, the only verdict-directing instruction given at plaintiffs' request. Mindful that this case was tried in December 1964 under our former instruction practice and convinced that quotation of instruction 2 in its entirety is unnecessary to proper understanding of our subsequent discussion and would contribute nothing to legal literature or learning, we do not expand this opinion by such quotation of this instruction which covers more than two full pages in the transcript. Without criticism of or reflection upon plaintiffs' capable counsel, we observe in passing that instruction 2, under our former practice not unusual in its length or complexity, provides an excellent example of the perplexing problems which finally drove the bench and bar to MAI.

Substantially simplified and considerably condensed, instruction 2 told the jury, in essence, that if they found (a) that Lorna "was standing on the west shoulder at the bottom of a hill or dip in and of Highway 7 \* \* \* and exercising ordinary care for her own safety," (b) that defendant Herman was southbound on the west side of the blacktop pavement, 21 feet in width, (c)

that, until he reached the crest of the hill, he could not have seen the point of accident approximately 400 feet distant therefrom, (d) that "under the said circumstances immediately preceding and at the time of the collision" defendant drove his automobile at a speed of 90 to 100 miles per hour, (e) that "it was negligent" for defendant so to drive "at 90 to 100 miles per hour under the circumstances mentioned and then and there existing," (f) that defendant "then and there negligently failed to have said Oldsmobile under such control that he could readily and reasonably stop in time to avoid striking Lorna," (g) that "such rate of speed and lack of control of defendant's Oldsmobile automobile under the circumstances shown in the evidence constituted negligence on the part of the defendant," and (h) that "as a proximate result of said negligence the Oldsmobile automobile swerved into collision and struck Lorna Lee Gumm and was the proximate cause of her death," then the verdict should be for plaintiffs unless the jury found that Lorna had been guilty of contributory negligence (in moving into the path of the Oldsmobile) as submitted in instruction 12. (All emphasis herein is ours.)

No less than eleven assignments of error in defendant's motion for new trial and five points or subpoints in his appellate brief, followed by fifteen pages of argument, are directed to alleged infirmities and errors in instruction 2. Out of this motley melange of charges, the patently meritorious and determinative complaint gleaned from defendant's brief, although imperfectly presented and developed, is that instruction 2 was confusing and granted "a roving commission" to the jury, particularly so in view of the inadequate hypothesization of disputed and material issues of fact.

 By instruction 2, plaintiffs submitted their case on two assignments of negligence, both of which had been pleaded in their petition, to wit, (1) defendant's excessive rate of speed and (2) his "lack of control" of his automobile. Of course, *ex-*

*cessive speed* was a charge of *specific* negligence; but, as stated in cases here cited by defendant [Annin v. Jackson, 340 Mo. 331, 338, 100 S.W.2d 872, 875; Rosenkoetter v. Fleer, Mo., 155 S.W.2d 157, 160(3)] and in numerous other instances [e. g., State ex rel. Burger v. Trimble, 331 Mo. 748, 55 S.W.2d 422, 423(1); Thompson v. Gipson, Mo., 277 S.W.2d 527, 531; Coit v. Bentz, Mo., 348 S.W.2d 941, 945, 946], *lack of control* was a charge of *general* negligence. It has long been the rule that a case may not be submitted upon both general and specific negligence. State ex rel. Burger v. Trimble, supra, 331 Mo. at 753, 55 S.W.2d at 424 (3); Thompson, supra, 277 S.W.2d at 531 (5, 6); Ficken v. Hopkins, Mo., 389 S.W.2d 193, 200(14); Harris v. Mound City Yellow Cab Co., Mo.App., 367 S.W.2d 43, 51 (4); Watson v. Long, Mo.App., 221 S.W.2d 967, 969(1).

■ In Bouchillon v. Weisbrod, Mo. App., 399 S.W.2d 638, we recently had occasion to plod down the furrows plowed by our Supreme Court in this legal field. As we there pointed out per Ruark, J., the controlling holdings are that a submission on loss or lack of control is a submission on general negligence and, except in res ipsa loquitur cases, is confusing and constitutes a roving commission to the jury. Miles v. Gaddy, Mo. (banc), 357 S.W.2d 897, 900; Treon v. City of Hamilton, Mo., 363 S.W.2d 704, 709; Rosenfeld v. Peters, Mo., 327 S.W.2d 264, 269(7). See May v. Bradford, Mo., 348 S.W.2d 133, 136; Coit, supra, 348 S.W.2d at 946; Vogelgesang v. Waelder, Mo.App., 238 S.W.2d 849, 856. And the *conjunctive* submission of acts of specific and general negligence (as, in the instant case, submission of excessive speed and lack of control) does not render the error harmless because the submission of lack of control is "not a correct statement of either statutory or case law and its inclusion renders the instruction prejudicially errone-

ous." Miles, supra, 357 S.W.2d at 901(3); Bouchillon, supra, 399 S.W.2d at 639. See also Portell v. Pevely Dairy Co., Mo., 388 S.W.2d 790, 792, 794(4); Charles F. Curry & Co. v. Hedrick, Mo., 378 S.W.2d 522, 536 (17); Donaldson v. Manzella, Mo., 338 S.W.2d 78, 83(3); Glowacki v. Holste, Mo., 295 S.W.2d 135, 140(4).[1]

In the course of his earnest endeavor to answer the shotgun attack of opposing counsel on instruction 2, plaintiffs' attorney points out that defendant "admitted that he lost control of his car," quotes an isolated statement out of context from Hinds v. Kircher, Mo., 379 S.W.2d 607, 610, and cites our opinion in Cluck v. Snodgrass, Mo. App., 381 S.W.2d 544. In the same section of his argument, plaintiffs' attorney insists (mistakenly, so we think) that "the position, location and distance between the Webster and Jeffries cars when parked on the highway was not in dispute," apparently maintaining on appeal, as he did in the trial court, that there was a clear space of 11 feet between those standing automobiles and that defendant could have passed between them safely and without difficulty.

■ In all of this, counsel overlooks defendant's testimony that, when he crested the hill, he "saw two cars blocking the road and some people standing around them," and the further question put to defendant, without objection, as to whether "at that time could you have operated your car between those two cars" and his answer, "no, I couldn't." It is true that defendant agreed on cross-examination that he had lost control of the Oldsmobile prior to striking Lorna. But that loss of control was *after* he had applied his brakes and "tried to get off on the [west] shoulder of the road hoping that I could go around on the right on the shoulder"—"trying to avoid everything in front of me," and *at the time* the rear end of his automobile went onto the

---

1. Under our present practice, there is no "MAI approved submission" on failure or lack of control [Evans v. Landolt, Mo., 389 S.W.2d 15, 19] and "[t]he practice of submitting dual or multiple theories of recovery or defense in the conjunctive is prohibited." MAI § 1.02.

**452**

west shoulder and the vehicle "half turned broadside." When this occurred and defendant lost control of his automobile, it was halfway down the hill, as plaintiffs' evidence concerning the skidmarks showed. Furthermore, the evidence in its entirety fairly would have *permitted*, although certainly not compelled, findings that defendant's effort to turn onto the west shoulder at least had contributed to cause his loss of control of the Oldsmobile and that such effort to turn had been motivated by a justifiable belief, reasonably reached on the situation confronting him when he had crested the hill, that the blacktop roadway was blocked. In the particular circumstances of this case, the failure of instruction 2 to hypothesize any facts bearing upon the disputed issue as to whether the blacktop roadway was blocked, was calculated to add to the confusion caused, and to confirm the roving commission conferred, by the naked general submission of "lack of control."

Neither case cited by plaintiffs in this connection is controlling or persuasive. In Hinds, supra, 379 S.W.2d at 609, defendant's contributory negligence instruction being reviewed upon plaintiff's appeal from an adverse judgment was "based on plaintiff's excessive speed" and did *not* include a general submission of loss or lack of control. In the peculiar circumstances of Cluck, supra, 381 S.W.2d 549, we found that "loss of control" had been hypothesized in the criticized instruction "merely as a factual element of the plaintiff's submission, not as a specification of negligence." The language and structure of instant plaintiffs' instruction 2, as well as the facts of the case, do not permit a similar conclusion here.

Although the author of the landmark opinion in Annin, supra, opined that "[i]t may be possible that situations may arise where the terms control, or management, embrace but a single matter of fact and may of themselves be fully descriptive of the same" [340 Mo. at 340, 100 S.W.2d at 876], more than 23 years later another discerning jurist observed in Myers v. Buchanan, Mo., 333 S.W.2d 18, 21, that "the proper case for such a submission [on loss or lack of control] has not yet appeared." That commentary may be repeated here as our former instruction practice phases out. On the authorities hereinbefore cited, we are driven to the conclusion that plaintiffs' instruction 2 was reversibly erroneous.

Since the case will be retried under our present simplified instruction practice, we do not extend this opinion by detailing and discussing the numerous other objections to instruction 2 and also those directed to instruction 4, plaintiffs' measure of damages instruction.

The judgment for plaintiffs is set aside and the case is remanded for retrial.

RUARK and HOGAN, JJ., concur.