Doris Louise McINTYRE, Appellant,

v.

Harold WHITED and Henry Covey, Respondents.

No. 53818.

Supreme Court of Missouri, Division No. 2.

April 14, 1969.

Louis Kranitz, Theodore M. Kranitz, St. Joseph, for appellant.

Dan Hale, James E. Taylor, St. Joseph, for respondents.

PRITCHARD, Commissioner.

The principal issue is whether the trial court erred in granting defendants a new trial for the giving of Instruction No. 2 for plaintiff:

"Your verdict must be for plaintiff against defendants if you believe:

"First, defendants either:

failed to operate their vehicle in compliance with the rules of the road, and to have the same under control at all times, or

drove on the wrong side of the road, and

"second, defendants' conduct, in any one or more of the respects submitted in paragraph First, was negligent, and

"Third, as a direct result of such negligence, Homer Eugene McIntyre died

unless you believe plaintiff is not entitled to recover by reason of Instruction # 7."

Plaintiff had recovered $25,000 damages for her husband's death and $200 property damage in a collision with his truck with the tractor-trailer rig of Harold Whited, which was being driven by his employee, Henry Covey. The occurrence was on an "S" curve, and on a hill, of Route B just south of State Highway 120 in Holt County, Missouri, on September 30, 1966.

According to Norman Clark Jefferies, District Chief Designer for the Missouri State Highway Patrol, Route B is straight for about 800 feet south from its junction with State Highway 120. Then Route B curves to the west 5 degrees for 600 feet, then curves to the east for 600 feet also at 5 degrees. This makes an "S" or compound type of curve. Route B has 20 feet of surface plus 2 feet of shoulder on each side, with an oil aggregate surface which tends to become slick in wet weather as any other bituminous mat.

Plaintiff's son, Gary, was driving her truck north, with her husband sitting in the right side of the cab. The truck was loaded with sack mineral and bulk feed. When he got .2 mile from State Highway 120, Gary observed a tractor-trailer coming down his (Gary's) side of the highway, the east side, at a time when Gary was coming around the southerly curve. The tractor was then in more of a southeasterly direction, and the trailer was north and south. It remained on Gary's side of the highway for just a few moments and just before the impact (which was in the middle of the road) Gary pulled to the middle of the highway "Because he was on my side and on the shoulder, and if he had kept coming the way he was I would have missed him because he just kept going straight north and south." It had just begun to rain and had quit, and the road surface was wet. Gary was approaching upgrade, his foot on

the accelerator at a speed of 35 to 40 miles per hour. The collision took place at the northern end of the (south) curve from which point Gary saw the other vehicle 125 to 150 feet away.

Henry Dale Covey testified on desposition (read into evidence in plaintiff's case): "I seen that curve ahead; started to slow up and went into a skid to the right. I tried to get back in the road to straighten up and went over on the northeast side and lost control of it." His further testimony at trial was that the Whited trailer was empty; it had rained but the shower was all over. The surface was wet at the place of collision. As he came across the top of the hill his speed was approximately 40 miles per hour, he "started to slide and went to brake it, and it slid right over all the way down the road and jackknifed and slid back into the ditch." As he came over the brow of the hill he shifted into high gear, as was customary, and "Well, I seen that curve and I seen the road was wet, and tried the brakes and it started sliding and never did get it back into control." When the skid started Covey was 339 feet north of the place of impact.

Sergeant E. F. Christman, of the State Highway Patrol, investigated the collision and found the vehicles at the scene. He testified the hill upon which the curves are situated was moderately steep. He found skid marks veering sharply to the left leading back from the McIntyre truck to the south for 96 feet, and from the Covey-Whited vehicle 325 feet, the latter beginning 150 feet from the crest of the hill in the southbound lane and going for about 100 feet, then into the northbound lane and east shoulder for about 150 feet, then back into the southbound lane. Covey told Christman, "I broke over that hill and saw that curve, so I started to *break* it down and one brake started to lock but it still went on into a skid, and that was about it." It is about 500 feet from the top of the hill to where the curve starts to go right. As one gets to that curve, the grade levels off.

Instruction No. 2 is erroneous for several reasons. First, it authorizes a verdict if defendants failed to operate their vehicle in compliance with the rules of the road. This can be only a general hypothesis of negligence. Apparently it has reference to § 304.014, RSMo 1959, V.A.M.S.: "Every person operating or driving a vehicle upon the highways of this state shall observe and comply with the *following* rules of the road." (Italics added.) The clause in the instruction has no reference to any prohibited act in operating a vehicle contained in Chapter 304, as an ultimate issue upon which there might be predicated a recovery for plaintiff.

Secondly, the conjunctive clause, "and to have the same under control," is likewise a general submission of negligence. Such submission has been severely criticized, Coit v. Bentz, Mo., 348 S.W.2d 941, 945 [5], and cases cited. In Miles v. Gaddy, Mo., 357 S.W.2d 897, the inclusion of the clause was held to render the instruction there prejudicially erroneous. See also Bouchillon v. Weisbrod, Mo.App., 399 S.W.2d 638; and Gumm v. Herman, Mo.App., 400 S.W.2d 447. Both of the foregoing submissions are erroneous because they couple general submissions of negligence with the following specific submission that defendants "drove on the wrong side of the road." In Koehler v. Schott, Mo.App., 426 S.W.2d 677, 680 [2–4], quoting the Gumm case, supra, it was said that "It has long been the rule that a case may not be submitted upon both general and specific negligence" and it was held that the rule is "equally applicable to M.A.I. instructions." There is no instruction in M.A.I. approving either a submission of failure to observe the rules of the road, or failure to keep a vehicle under control.

Thirdly, the instruction ignored the evidence of skidding, some of which came into the case through the offering of Covey's deposition testimony, and what he told the highway patrolman. It is true that Gary's testimony was that Covey was on

**452**

the wrong side of the road with the tractor-trailer rig as he was coming down the hill. But the other testimony in plaintiff's case injected the fact of Covey's skid onto the wrong side of the road. There was no evidence that Covey "drove" his vehicle onto the wrong side of the road. In Evans v. Colombo, Mo., 319 S.W.2d 549, 550 [1], it was said, "It is true that evidence of *mere skidding* does not make a submissible case, if there is nothing more. * * * But this rule, it is said, applies only where the evidence shows that the skidding 'is the "sole factual cause".' * * * And, although negligence may not be inferred from skidding alone, it may be found or inferred from evidence and circumstances of which skidding is a part. * * * In some circumstances it may be inferred that the skidding was caused by negligence. * * * And in certain 'skidding' cases specific negligence has been affirmatively shown, either as the cause of the skidding or as an independent proximate cause of the injury."

It is not claimed by the defendants that plaintiff made no submissible case. It is, in effect, claimed that the negligent acts antecedent to the skid by Covey are not hypothesized in the instruction. In the retrial of this case, appropriate instructions may be framed under M.A.I. to cover the factual situation which may then develop.

Plaintiff's Point II that "The verdict was for the right party on the facts, so that even if Instruction No. 2 were erroneous, the error is harmless; because the evidence supports both a verdict for plaintiff and the hypotheses of Instruction No. 2" is without merit. As alluded to above, the jury's attention was not directed to any ultimate fact, under the cases, upon which it could base a verdict for plaintiff.

■ The trial court did not err in granting a new trial on all issues, including damages. The evidence here shows that the McIntyre family conducted a family enterprise of trucking, the operation of a recreation hall, and a corn shelling business. Gary, two younger sons, and Mrs. McIntyre all participated in such enterprise. Joint tax returns admitted into evidence did not show what proportion of income was the result of plaintiff's decedent's labors. The trial court did not abuse its discretion in awarding a new trial on all issues. Artstein v. Pallo, Mo., 388 S.W.2d 877; Myers v. Moffett, Mo., 312 S.W.2d 59.

The judgment is affirmed.

BARRETT, C., concurs.

STOCKARD, C., not sitting.

PER CURIAM:

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

FINCH, P. J., and DONNELLY, MORGAN and HOLMAN, JJ., concur.